IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2019 Term

No. 17-1066

FILED
**April 3, 2019**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Respondent

v.

JOE ROGER LANE,
Petitioner

Appeal from the Circuit Court of Wyoming County
The Honorable Warren R. McGraw, Judge
Criminal Action No. 16-F-107

AFFIRMED, IN PART;
REVERSED, IN PART, AND REMANDED

Submitted: January 29, 2019
Filed: April 3, 2019

Robert P. Dunlap, Esq.                     Patrick Morrisey, Esq.
Sarah F. Smith, Esq.                          Attorney General
Beckley, West Virginia                        Holly M. Flanigan, Esq.
Counsel for the Petitioner                    Assistant Attorney General
                                              Julianne Wisman, Esq.
                                              Assistant Attorney General
                                              Charleston, West Virginia
                                              Counsel for the Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.
JUSTICE ARMSTEAD dissents, and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1.      "The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt.  Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt."  Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

2.      "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden.  An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution.  The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt.  Credibility determinations are for a jury and not an appellate court.  Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled."  Syl. Pt. 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

i

3.      "When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict.  This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt."  Syl. Pt. 2,  *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996).

4.      "'"'The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syllabus point 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997).' Syllabus Point 1, *State v. Booth*, 224 W. Va. 307, 685 S.E.2d 701 (2009)."  Syl. Pt. 1, *State v. Kilmer*, 240 W. Va. 185, 808 S.E.2d 867 (2017).

5.      "While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence."  Syl. Pt. 4, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981).

6. "The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5, will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute." Syl. Pt. 7, *State v. Beck*, 167 W. Va. 830, 831, 286 S.E.2d 234 (1981).

Workman, Justice:

The petitioner, Joe Roger Lane, appeals the November 6, 2017, order sentencing him to life in prison with mercy in accordance with the recidivist statute, West Virginia Code §§ 61-11-18 (2014) (referred to as "recidivist life sentence"), based upon a felony conviction for two counts of delivery of a controlled substance and two prior felony convictions for unlawful wounding and conspiracy to commit the felony of transferring stolen property. The petitioner argues that there was insufficient evidence to convict him of the two delivery of a controlled substance counts and that the circuit court's imposition of a life sentence violates the proportionality clause of the West Virginia Constitution.[1] Based upon our review of the parties' briefs and arguments, the appendix record and all other matters before the Court, we affirm the petitioner's conviction for two counts of delivery of a controlled substance. We reverse, however, the circuit court's imposition of a recidivist life sentence as it violates the proportionality clause of the West Virginia Constitution and remand the case to the circuit court for resentencing.

## I. Facts

On October 10, 2015, the petitioner sold Oxycodone to a confidential

---

[1]*See* W. Va. Const. art. III, § 5.

informant[2] on two separate occasions. The petitioner was indicted on May 25, 2016, on three counts of delivery of a controlled substance.[3]

The petitioner's trial commenced on November 29, 2016. The respondent, State of West Virginia ("the State"), first called Capt. Don Cook with the Wyoming County Sheriff's Department and assigned to the Southern Regional Drug and Violent Crime Task Force. Capt. Cook testified that he suspected the petitioner was involved in the illegal sale of prescription medication. According to the officer, the petitioner was living at a residence where controlled substances were being sold by numerous individuals. Capt. Cook further testified that on October 10, 2015, he used Ina New, a confidential informant working for the Southern Regional Drug and Violent Crime Task Force, to conduct two controlled buys from the petitioner. For the first buy, Ms. New was given $50, which she used to purchase two Oxycodone 50 milligram pills for $45. Ms. New was wearing a hidden camera that recorded the encounter during the drug purchases. The second buy, which followed the first and occurred on the same day, also resulted in her purchase of two more Oxycodone pills from the petitioner for $45. The second encounter was also videotaped. Capt. Cook stated that

[2]As an ancillary matter, in cases where the confidential informant's identity need not be disclosed, for instance when a plea is entered, the parties should make every effort to protect the individual's identity by using his or her initials. In this case, however, the confidential informant testified at trial.

[3]The third count was dismissed prior to trial because lab results on the drug had not been provided.

he had searched Ms. New and her vehicle prior to and after each purchase to ensure that there were no illegal substances, money or other contraband on her person or in her vehicle. The serial numbers on the money given to Ms. New were recorded. The pills that Ms. New purchased were sent to the State Police laboratory for testing and were confirmed to be Oxycodone. Capt. Cook testified that he reviewed the video, but he did not see the actual exchange of the pills purchased as they were tiny.

Like Capt. Cook, Ms. New also testified concerning the drugs she purchased from the petitioner while acting as a confidential informant. She stated she had purchased illegal substances from the petitioner in the past. On October 10, 2015, when she arrived at the residence where the petitioner was located, a woman, who Ms. New identified as Ashley Lambert, and her little girl, answered the door. Ms. Lambert was insistent that Ms. New speak to her or the homeowner, identified as Jimmy Mullens,[4] instead of the petitioner. Ms. New insisted that she speak with the petitioner. Ms. New testified that Ms. Lambert appeared "so high and that baby was standing there. So . . . [the petitioner] come [sic] outside . . . he was outside the door." Once the petitioner stepped out onto the porch, Ms. New told him she wanted two (meaning two Oxycodone).[5] Ms. New testified that the pills were not captured on the video recorded by the hidden camera she was wearing. The jury

[4]Jimmy Mullens's last name is also spelled Mullins in the appendix record.

[5]There was no testimony that the female Ms. New first encountered and/or the baby were also on the front porch at the time the pills were purchased from the petitioner.

3

also watched the video. The petitioner attacked Ms. New's credibility by bringing to the jury's attention that she had a prior misdemeanor conviction for domestic violence in Virginia, as well as pending charges for forgery and uttering in West Virginia, stemming from her prior drug problem. Ms. New testified that she was not using drugs at the time she made the purchases and had been clean since she lost her youngest son.[6]

The jury also heard from Tara Hayslip, a forensic analyst with the West Virginia State Police Laboratory, who was qualified as an expert. Ms. Hayslip stated that she tested the pills purchased and confirmed they were Oxycodone, a Schedule II Controlled Narcotic Substance.

At the conclusion of the State's case, the petitioner did not take the stand to testify and offered no evidence in his defense. The case was then sent to the jury which found the petitioner guilty of two counts of delivery of a controlled substance.

On January 27, 2017, the State filed a recidivist information alleging that the petitioner was previously convicted of unlawful wounding on March 20, 1997, and conspiracy to commit a felony of transferring stolen property on June 13, 2009. *See* W. Va. Code § 61-11-19 (2014). The petitioner's recidivist trial commenced on February 1, 2017,

---

[6]Capt. Cook testified that he had worked with Ms. New since November of 2013.

4

and resulted in a hung jury. On November 1, 2017, the petitioner's second recidivist trial commenced and resulted in the jury finding that the petitioner was the same person who had been convicted of the prior two felonies identified in the information. Thereafter, on November 6, 2017, the circuit court sentenced the petitioner to life in prison with mercy pursuant to West Virginia Code § 61-11-18. The instant appeal followed.

## II. Standard of Review

The petitioner raises two separate issues on appeal each of which requires this Court to apply different standards of review. The Court, therefore, sets forth those standards within the discussion section of each issue as we proceed to determine whether the petitioner is entitled to relief.

## III. Discussion

### A. Sufficiency of Evidence

The first issue concerns whether there was sufficient evidence to convict the petitioner of two counts of delivery of a controlled substance. We review sufficiency of the evidence challenges under the following standards of review:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence

5

in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

. . . .

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. Pts. 1 and 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). We further held

in syllabus point two of *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996):

When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.

Keeping these standards in mind, we examine whether the evidence was sufficient to support

the petitioner's conviction.

6

The petitioner argues that the State relied heavily upon the testimony of a confidential informant, along with video recordings of the alleged buys, "to elicit the elements of the alleged crime." The petitioner asserts that there were a "multitude of credibility issues" concerning the confidential informant, which included the confidential informant's admission to pending criminal charges as well as a prior misdemeanor domestic violence charge. The petitioner contends that the confidential informant, who was the only eyewitness of the alleged drug buy, had the most to gain from the petitioner's arrest as she was "not only promised leniency but actually paid cash for her work." Thus, the petitioner maintains the circuit court erred in denying his motion for a new trial as this evidence was insufficient to convict. Conversely, the State argues that our standard of review applicable to sufficiency of the evidence claims requires this Court to review the evidence and the credibility assessments the jury might have made in favor of the prosecution. *Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169, Syl. Pt. 3. As the State maintains, "[c]redibility determinations are for a jury and not an appellate court." *Id*. The State contends that under our law, the petitioner's argument, which focuses solely upon the credibility of the confidential informant, involves a determination that rests with the jury and not this Court.

West Virginia Code § 60A-4-401 (2014) provides, in relevant part, that "it is unlawful for any person to . . . deliver, or possess with intent to . . . deliver, a controlled substance." The evidence introduced at the petitioner's trial established that on two separate

7

occasions on the same day, the petitioner possessed Oxycodone, a controlled substance, and delivered four Oxycodone pills to a confidential informant, Ms. New, as part of two separate controlled buys. *See id.* The jury was presented with the law enforcement officer's testimony, the confidential informant's testimony and videotape evidence, all of which established that the delivery of a controlled substance occurred. Challenges to the confidential informant's credibility were made during cross-examination of that witness and during the petitioner's closing argument. Given the jury's decision to convict the petitioner following its deliberations, the jury clearly found the confidential informant to be a credible witness. We find the evidence established the requisite elements necessary for a jury to find, beyond a reasonable doubt, that the petitioner on two separate occasions on October 10, 2015, sold two Oxycodone pills to a confidential informant. We, therefore, find the circuit court did not err in denying the petitioner's motion for a new trial and affirm the petitioner's conviction on two counts of delivery of a controlled substance.

### B. Constitutional Proportionality of Recidivist Life Sentence

The petitioner's second assigned error centers upon whether his life sentence with mercy, which was imposed by the circuit court in accordance with West Virginia Code § 61-11-18(c), violates the proportionality clause of the West Virginia Constitution.[7] Our review of this issue is in accordance with the following standards of review:

---

[7]*See supra* note 1.

> "'The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus point 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997)." Syllabus Point 1, *State v. Booth*, 224 W. Va. 307, 685 S.E.2d 701 (2009).

Syl. Pt. 1, *State v. Kilmer*, 240 W. Va. 185, 808 S.E.2d 867 (2017). Guided by this standard, we undertake an examination of the issue before us.

The petitioner argues that his sentence is unconstitutionally disproportionate to the crimes he has committed. He concedes that his first conviction for unlawful wounding is a crime of violence. But he argues that this conviction was twenty years ago and that he has had no other convictions involving crimes of violence. The petitioner further maintains that he was sentenced to the Anthony Center for Youthful Offenders ("Anthony Center") for this conviction and was placed on probation after he successfully completed the program at the Anthony Center. The petitioner's second felony conviction for conspiracy to commit a felony, which was transferring stolen property, resulted in the petitioner being placed on probation after being credited with pre-conviction time spent in jail. As for the petitioner's triggering felony convictions in the instant matter, the petitioner contends that "[t]here was no testimony presented by the State that indicated actual or even threatened violence" surrounding the commission of the crime. The petitioner further argues that the penalty for

9

delivery of a controlled substance carries a sentence of one to fifteen years,[8] but does not require mandatory incarceration; that the penalty for a second conviction of delivery of a controlled substance carries a sentence of two to thirty years; and that the sentence(s) may be suspended or alternative sentence imposed by the circuit court. As the petitioner posits, "it should shock the conscience of any reasonable person that Petitioner received a life sentence for three crimes that mostly [sic] likely standing alone would have resulted in Petitioner serving probation."

Conversely, the State argues that the petitioner's life sentence is not disproportionate to his criminal conduct. According to the State, when the petitioner's felony convictions giving rise to the imposition by the circuit court of a life sentence are examined, the final and "triggering" offense of delivery of a controlled substance involved "the potentiality of violence[,]" warranting a life sentence. The State's position is grounded in a general condemnation of drug trafficking and the "Opioid Crisis" as reflected in its

---

[8]West Virginia Code § 60A-4-401 (a)(i) provides:

> Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.
> Any person who violates this subsection with respect to:
> (i) A controlled substance classified in Schedule I or II, which is a narcotic drug, is guilty of a felony and, upon conviction, may be imprisoned in the state correctional facility for not less than one year nor more than fifteen years, or fined not more than twenty-five thousand dollars, or both[.] . . .

10

argument that "[i]llegal drug trade is proximately linked to violence against a person in that it evolves from a culture of physical peril, harm to children (such as those born with withdrawals or, as in this case, direct witnesses to drug transactions and drug-intoxicated adults), and crippling addictions."[9] Thus, the State argues that "[g]iven the high potential for violence in controlled substances investigations, this Court should continue to affirm drug felonies as qualifying offenses in life recidivist enhancements."

Under the proportionality clause of the West Virginia Constitution as set forth in article III, section 5, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. *Penalties shall be proportioned to the character and degree of the offence*." (Emphasis added). In this case, the petitioner was sentenced to a recidivist life sentence according to the provisions of West Virginia Code § 61-11-18(c), which expressly provides that if a defendant has "been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life." Despite the statute providing that a life sentence "shall" be imposed where a defendant has been convicted of three felonies, any life sentence imposed by the circuit court under the recidivist statute, nonetheless, is

---

[9]We find the State's reliance on various cases where parental rights were terminated because children were exposed to illegal drugs by adults in the home, where children were born drug-addicted, or where victims were killed during the course of drug deals to be unavailing in our examination of whether the petitioner's crimes warrant the imposition of a recidivist life sentence.

11

subject to scrutiny under the proportionality clause of our Constitution.  *See* W. Va. Const.

art. III, § 5; U. S. Constitution amend VIII.

To that end, we held in syllabus point four of *Wanstreet v. Bordenkircher*, 166

W. Va. 523, 276 S.E.2d 205 (1981), that "[w]hile our constitutional proportionality standards

theoretically can apply to any criminal sentence, they are basically applicable to those

sentences where there is either no fixed maximum set by statute or where there is a life

recidivist sentence." Significantly, "we have consistently viewed the West Virginia recidivist

statute in a restrictive fashion in order to mitigate its harshness."  *Id.* at 528, 275 S.E.2d at

209.  Thus, we further stated in *Wanstreet* that:

> [w]hen we analyze a life recidivist sentence under
> proportionality principles, we are in effect dealing with a
> punishment that must be viewed from two distinct vantage
> points: first, the nature of the third offense and, second, the
> nature of the other convictions that support the recidivist
> sentence. This duality is occasioned by the fact that the
> punishment for the third felony conviction is an automatic life
> sentence regardless of the nature of the penalty for the
> underlying third felony. . . .
>
> We do not believe that the sole emphasis can be placed
> on the character of the final felony which triggers the life
> recidivist sentence since a recidivist statute is also designed to
> enhance the penalty for persons with repeated felony
> convictions, i.e., the habitual offenders.  However, for purposes
> of proportionality, the third felony is entitled to more scrutiny
> than the preceding felony convictions since it provides the
> ultimate nexus to the sentence.

*Id*. at 533-34, 276 S.E.2d at 212 (footnote omitted).  We then held shortly after *Wanstreet*:

12

The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5, will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. *The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute*.

Syl. Pt. 7, *State v. Beck*, 167 W. Va. 830, 831, 286 S.E.2d 234 (1981) (emphasis added); *accord Kilmer*, 240 W. Va. at 185, 808 S.E.2d at 867-68, Syl. Pt. 3.

Upon our examination of the facts of this case, we agree with the petitioner that the imposition of a life sentence, with mercy, for the three felonies for which the petitioner stands convicted violates the proportionality clause of the West Virginia Constitution. *See* W. Va. Const. art. III, § 5. Despite the State's argument to the contrary, the facts surrounding the final triggering offense committed by the petitioner–the delivery of four Oxycodone pills–did not involve any actual or threatened violence. There was no testimony or evidence, whatsoever, to support any type of violence or even perceived violence surrounding the controlled buys of Oxycodone. While there was testimony that a child was present when the confidential informant first knocked on the door of the residence in which the petitioner was located, there was no evidence that when the petitioner came out onto the porch to conduct the sale of the Oxycodone pills to the confidential informant that the child was present.

13

Moreover, when examining the petitioner's prior felonies, although he had a conviction for the violent felony of unlawful wounding, that conviction occurred twenty years prior to the drug offense. Further, the petitioner's second felony of conspiracy to commit transferring stolen property did not involve any violence or threat of violence. The prior sentences imposed on the petitioner for these prior felonies were not serious penalties so as to justify this Court now imposing a life recidivist sentence.

We find support for our conclusion that the petitioner's recidivist life sentence violates the proportionality clause of the West Virginia Constitution in *State ex rel. Boso v. Hedrick*, 182 W. Va. 701, 391 S.E.2d 614 (1990), where a defendant argued in a habeas proceeding that his life sentence imposed under the recidivist statute violated the proportionality clause. In *Boso*, we reemphasized our law that undoubtedly directs that we focus the imposition of a life sentence under the recidivist statute on the triggering felony. As we stated in *Boso*, "the third felony is entitled to more scrutiny than the previous felony convictions for purposes of proportionality 'since it provides the ultimate nexus to the sentence.'" *Id.* at 708, 391 S.E.2d at 621(quoting, in part, *Wanstreet*, 166 W. Va. at 534, 276 S.E.2d at 212.). This Court, in *Boso*, then granted the defendant habeas relief regarding his sentence, finding that the defendant, who had been previously convicted of delivery of a controlled substance, which was twenty grams of marijuana, and breaking and entering, should not have been sentenced to life imprisonment for this third felony of night-time

burglary. The Court focused upon the fact that neither of his first two felony convictions, which included delivery of a controlled substance, were "per se" crimes of violence. *Id.* at 709, 391 S.E.2d at 622. Further, the Court expressly noted that "[t]here is nothing in the record to indicate that any weapons were used in these crimes or that there was a threat of violence to any person." *Id*. The case was remanded to the circuit court for resentencing on the third felony. *Id*.

Similarly, in *State v. Deal*, 178 W. Va. 142, 358 S.E.2d 226 (1987), this Court again reversed the circuit court's imposition of a life sentence under the recidivist statute and remanded for resentencing, finding that the sentence violated the proportionality clause of our Constitution. *Id*. at 146-47, 358 S.E.2d at 230-31. In *Deal*, we found that the defendant's most recent conviction of possession of the controlled substance of 125.4 grams of marijuana with intent to deliver involved no violence or threat of violence to the person. *Id*. at 143 and 147, 358 S.E.2d at 227 and 231. The defendant also had a prior violent felony conviction for unlawful wounding that had occurred some sixteen years before and his second felony conviction was for grand larceny, which was a nonviolent crime. *Id*. at 146, 358 S.E.2d at 230. This Court determined that "[w]e do not believe the facts in this case warranted imposition of the ultimate punishment available in this jurisdiction." *Id*. at 147, 358 S.E.2d at 231; *see generally Kilmer*, 240 W. Va. at 185, 808 S.E.2d at 868, Syl. Pt. 4 (finding that felony offense of driving while license revoked for driving under influence is

15

not offense that involves actual or threatened violence to person for purposes of invoking recidivist statute).

We reject the State's reliance upon *State ex rel Daye v. McBride*, 222 W. Va. 17, 658 S.E.2d 547 (2007), to support its position that this Court has upheld life sentences for drug-related felonies. In *Daye*, this Court examined whether a life sentence was properly imposed by the circuit court after the defendant was convicted a third time for possession of crack cocaine with intent to deliver, second or subsequent offense. The defendant had two prior felony convictions for possession of crack cocaine with intent to deliver, which formed the basis for the recidivist information that was filed against him. The trial court declined to impose a recidivist life sentence, despite the defendant's conviction as an habitual offender. *Id*. at 20, 658 S.E.2d at 550. Instead, the circuit court sentenced the defendant to not less than ten nor more than thirty years under delivery of a controlled substance statute. *Id*. The State then filed a motion to correct an illegally imposed sentence under Rule 35(a) of the West Virginia Rules of Criminal Procedure, contending that a recidivist life sentence was mandatory under West Virginia Code § 61-11-18. 222 W. Va. at 20, 658 S.E.2d at 550. The circuit court entered a "corrected" order sentencing the defendant to life imprisonment. *Id*. The petitioner's direct appeal challenging his life sentence was denied by this Court.

16

Later, however, the defendant, Mr. Daye, filed a pro se habeas petition, which was summarily denied by the circuit court and the defendant appealed. *Id*. at 21, 658 S.E.2d at 551. Mr. Daye claimed that when all of a defendant's convictions are drug-related, the requirements of the recidivist statute had to give way to the enhancement provisions of the Uniform Controlled Substances Act. *Id*. at 22, 658 S.E.2d at 553. This Court disagreed, holding in syllabus point five:

> When any person is convicted of an offense under the Uniform Controlled Substances Act (W. Va. Code, Chapter 60A) and is subject to confinement in the state correctional facility therefor and it is further determined, as provided in W. Va. Code, 61-11-19 (1943), that such person has been before convicted in the United States of a crime or crimes, including crimes under the Uniform Controlled Substances Act (W. Va. Code, Chapter 60A), punishable by confinement in a penitentiary, the court shall sentence the person to confinement in the state correctional facility pursuant to the provisions of W. Va. Code, 61-11-18 (2000), notwithstanding the second or subsequent offense provisions of W. Va. Code, 60A-4-408 (1971).

222 W. Va. at 18, 658 S.E.2d at 548, Syl. Pt. 5. The Court, in so holding, acknowledged in *Daye* that

> *we believe that the filing of such informations pursuant to W. Va. Code, 61-11-19 (1943) is relatively rare and only occurs in more extreme cases where a defendant's criminal history suggests that a more severe sentence than may be imposed by the penalty for the underlying offense.* Furthermore, since *many of the offenses under the Uniform Controlled Substances Act are relatively minor and involve little or no danger to others*, they may be inappropriate for the more severe treatment under W. Va. Code, 61-11-18 (2000) and W. Va. Code, 61-11-19 (1943).

222 W. Va. at 23, 658 S.E.2d at 553 (emphasis added). Consequently, it is clear that *Daye* has very limited application to the case at bar, which does not involve multiple convictions under the Uniform Controlled Substances Act. Furthermore, there was no constitutional proportionality clause challenge to the life sentence imposed in *Daye*. The Court, therefore, did not engage in any analysis of whether the life sentence imposed upon Mr. Daye violated the proportionality clause of our constitution.

Accordingly, we find that under the facts and law before us, the imposition of a life sentence with mercy was unwarranted and an abuse of discretion. We, therefore, reverse the circuit court's sentencing decision on the basis that the petitioner's recidivist life sentence violates the proportionality clause of the West Virginia Constitution.

## IV. Conclusion

For the reasons stated herein, we find no error in the petitioner's underlying conviction of two counts of possession of a controlled substance with intent to deliver, but we reverse the judgment of the Circuit Court of Wyoming County insofar as it imposes a life sentence for recidivism and remand the case to that court for resentencing.

Affirmed, in part;
reversed, in part, and remanded.