# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 19-0566** (Roane County 18-F-6)

**Matthew Starr Flanders,**
**Defendant Below, Petitioner**

**FILED**
**June 3, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Matthew Starr Flanders, by counsel Calvin C. Honaker, appeals the July 15, 2019, order of the Circuit Court of Roane County denying his Rule 35 motion. Petitioner also challenges rulings by the trial court. The State of West Virginia, by counsel Gordon L. Mowen, filed a response in support of the circuit court's orders.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

This criminal action stems from a September 21, 2017, incident where petitioner barricaded himself inside a home with a shotgun and several rounds of ammunition in Spencer, West Virginia. Petitioner, a convicted felon, spent approximately seven hours shooting at police officers from various police departments during the standoff as they attempted to coax him from his position. Petitioner fired at least ten shots at the responding officers, and the officers were forced to return fire. The standoff ended after police used teargas[1] and a robot to enter the home to apprehend petitioner. While teargas was being used to breach the house, petitioner continued to resist and said something along the lines of "come and get me" and "I will fight it out with the police." Ultimately, officers recovered a loaded shotgun from the residence, live ammunition, and twenty-nine empty shotgun casings.

---

[1] Per the record, petitioner continued to shoot even after police officers shot teargas into the dwelling.

1

Petitioner was indicted by a Roane County grand jury during the January of 2018 term of court on eight counts of wanton endangerment involving a firearm, in violation of West Virginia Code § 61-7-12, and two counts of possession of a firearm by a prohibited person, in violation of West Virginia Code § 61-7-7. The victims named in the indictment were several police officers who responded to the scene, along with a local resident, Jeremy Burrows, who was present before the police arrived.[2]

Before trial, petitioner filed a motion to suppress a statement he gave to one of the investigating officers, Sgt. F.L. Hammack, following his arrest. Petitioner argued that he was not properly informed of his right to remain silent and was incapable of waiving his rights due to his mental incapacity.[3] The court held a hearing on this motion on April 6, 2018, during which Sgt. Hammack testified that he first interacted with petitioner at the scene of the crime and later obtained a recorded statement from petitioner at the Spencer Police Detachment after petitioner was under arrest. Sgt. Hammack testified that he went over petitioner's *Miranda* rights[4] with him by reviewing a *Miranda* Rights Waiver Form. Although this form is typically initialed by the suspect, Sgt. Hammack obtained petitioner's verbal acknowledgement, electing to keep petitioner handcuffed due to the circumstances leading to his arrest.

During their conversation, petitioner informed Sgt. Hammack that he had consumed methamphetamines earlier that day. Per Sgt. Hammack, who had been in law enforcement for twenty-one years at the time of his testimony and had substantial experience interacting with people who were incoherent due to intoxication, petitioner was *not* incoherent during the conversation at issue. To the contrary, petitioner provided Stg. Hammack with biographical information, including his name, date of birth, and social security number; understood he was under arrest; and had a reasonable understanding of the time of day and place of his conversation with Sgt. Hammack.

Prior to ruling on petitioner's motion to suppress, the circuit court listened to the audio recording of petitioner's statement. Based upon the totality of the circumstances, including its review of the audio recording, the court determined that petitioner was not intoxicated, noting that "the audio recording of the statement clearly shows [petitioner] was coherent at the time he was provided his Miranda rights"; that "[petitioner] was able to give biographical information including date of birth, his current address and his social security number"; and that he "clearly was aware that he was speaking to law enforcement." The court concluded as a matter of law that petitioner "freely and voluntarily waived his Fifth Amendment right to remain silent after he was advised of his right to remain silent and provided a statement to law enforcement."

---

[2] Mr. Burrows testified that, before the police arrived, he was shot at by petitioner through the bathroom window of the residence.

[3] Petitioner argued that he did not have the mental capacity to waive his rights because he used methamphetamine, but later testified that his consumption of methamphetamines was "miniscule" and had no effect on him.

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Jury selection for petitioner's trial began on February 23, 2019, and a panel of twenty-three prospective jurors was called into the courtroom. Based upon voir dire, petitioner moved the court to strike three jurors, Sheila Miller,[5] Jerry Greathouse,[6] and Rebecca Westfall,[7] for cause. The circuit court took this motion under advisement. Ultimately, petitioner used his preemptory strikes to have those three potential jurors removed from the jury panel, and, therefore, none of these individuals were among the twelve individuals who were selected for the jury panel.

The State presented its case in chief. After the State rested, petitioner testified on his own behalf that he was laying on the ground looking at the stars when he saw two individuals nearby on the night in question. Per petitioner, these individuals scared him and he "took off running" into his friend's house, grabbed a shotgun, and barricaded himself in the bathroom. Petitioner claims that he heard shots being fired outside so he fired back. Petitioner denied knowing that the individuals outside were police officers, and he suggested that there was a conspiracy to have him killed.

After deliberating, the jury acquitted petitioner of one of the counts of possession of a firearm by a prohibited person, but convicted him of brandishing as a lesser included offense of wanton endangerment. Petitioner was also convicted of the remaining counts as charged in the indictment – one count of possession of a firearm by a prohibited person and seven counts of wanton endangerment.

The State filed a recidivist information charging petitioner with having been previously convicted of the following felonies: felony receiving of a stolen vehicle in 2012;[8] three felony

---

[5] Ms. Miller informed the court and the parties during voir dire that Officer Lanier, one of the investigating officers, is her nephew. She denied interacting with him often and affirmed that she would not give a police officer more credibility simply because of her relationship to Officer Lanier.

[6] Mr. Greathouse is the uncle of a West Virginia State Trooper, but his nephew was not involved in the case. Further, Mr. Greathouse had not discussed this case with his nephew, whom he rarely sees. He confirmed that a defendant does not need to prove his innocence and stated that he would not believe an officer over another witness simply because that person is in law enforcement.

[7] Ms. Westfall was not familiar with petitioner's case. She initially stated it would be good for a defendant to testify at trial, but upon further questioning clarified that a defendant does not have to testify to prove his innocence. Further, she agreed that she knew the State had the burden of proving guilt.

[8] Per the presentence investigation report, petitioner was observed shooting a firearm near the stolen vehicle, and was found in the same location as a bulletproof vest, several firearms, and some ammunition at the time of his arrest. He had also been charged with possession of a firearm by a prohibited person, which was dismissed pursuant to a plea deal.

3

convictions of breaking and entering of a building other than a dwelling in 2004;[9] felony grand larceny in 2004; felony possession with intent to deliver a controlled substance in 2004; and five counts of felony conspiracy to commit a felony in 2004. At a recidivist trial, petitioner was found to have been previously convicted of the felony offenses as outlined in the information.

Petitioner was sentenced to one year in the regional jail for brandishing a deadly weapon; five years of imprisonment for each of his convictions of wanton endangerment;[10] and life imprisonment for his conviction of possession of a firearm,[11] in accordance with petitioner's recidivist conviction. Petitioner was credited with time served in the amount of 237 days against the sentence.

Petitioner filed a motion for reconsideration of his sentence pursuant to Rule 35 of the West Virginia Rules of Criminal Procedure. He argued that the life sentence imposed upon him was unconstitutional because his predicate felonies did not involve actual or threatened violence. On July 15, 2019, the circuit court denied petitioner's motion to reconsider and found that his previous crimes involved actual violence or the threat of violence, as did the felonies at issue in the September 21, 2019, conviction. When considering the motion, the circuit court noted that petitioner's increasingly dangerous criminal history and predicate felonies, as well as the triggering offenses, were violent in nature or had the potential for violence.

In his first assignment of error, petitioner argues that the circuit court committed reversible error in allowing biased jurors to remain on petitioner's jury panel. We have long held that "[t]he determination of whether a prospective juror should be excused to avoid bias or prejudice in the jury panel is a matter within the sound discretion of the trial judge." *O'Dell v. Miller,* 211 W. Va. 285, 288, 565 S.E.2d 407, 410 (2002) (citations omitted). Here, we refuse to disturb the discretion of the trial judge.

"In order to obtain a new trial for having used a preemptory strike to remove a biased juror from a jury panel, a criminal defendant must show prejudice." Syl. Pt. 3, in part, *State v. Sutherland*, 231 W. Va. 410, 745 S.E.2d 448 (2013). Petitioner has not satisfied and cannot satisfy this standard. As it relates to petitioner's motion to strike jurors Greathouse and Miller for cause, it is well established that

> [a] prospective juror's consanguineal, marital or social relationship with an employee of a law enforcement agency does not operate as a per se disqualification for cause in a criminal case unless the law enforcement official is actively involved in the prosecution of the case. After establishing that such a relationship exists, a party has a right to obtain individual voir dire of the challenged juror to determine possible prejudice or bias arising from the relationship.

---

[9] The 2004 felony convictions arose when petitioner broke into a business and was found to be in possession of Ketamine.

[10] These were counts 2 through 8 from the Indictment.

[11] This was count 10 of the Indictment.

Syl. Pt. 6, *State v. Beckett,* 172 W. Va. 817, 310 S.E.2d 883 (1983).

Individual voir dire was conducted as to the three potential jurors. As to Juror Greathouse, his responses elucidate that he was not biased merely as a result of his familial relationship to a police officer. Moreover, petitioner's suggestion that bias should be presumed cannot withstand scrutiny as this Court has held that "[a]ctual bias can be shown either by a juror's own admission of bias or by proof of specific facts which show the juror has such prejudice or connection with the parties at trial that bias is presumed." Syl. Pt. 1, *Sutherland* (citation omitted).

Also, the circuit court did not err when it declined to strike Juror Westfall for cause. Although she stated it would be "good" for a defendant to testify on his own behalf, she clarified that a defendant is not required to testify to prove his innocence and she could find someone "not guilty" even if he or she does not testify. She also acknowledged that the State has the burden of proving guilt beyond a reasonable doubt. Thus, Ms. Westfall's responses do not manifest the type of bias that necessitate automatic removal from the panel for cause.

Even accepting petitioner's initial premise that all three jurors should have been excused by the court for cause, petitioner cannot show prejudice because all of the jurors were removed by petitioner's strikes before the jury was empaneled. Therefore, he cannot argue that he was forced to accept a juror who should have been excused for cause. Notably, petitioner made no attempt to argue in this appeal that the final twelve members of the jury were unfair or partial.[12]

Next, petitioner argues that the circuit court committed reversible error in imposing a life sentence pursuant to West Virginia Code § 61-11-18(c). In sentencing petitioner, the circuit court examined this Court's decision in *State v. Lane*, 241 W. Va. 532, 826 S.E.2d 657 (2019), and appropriately distinguished this matter from that case. The circuit court found:

> [t]he case at hand is distinguishable from the facts which were presented in *Lane.* Defendant's criminal record shows an escalation in his criminal behavior and penitent for violence, as well as the fact that the offenses were committed over a short period of time. While the petitioner in *Lane* only committed four (4) felony

---

[12] In a recent case we held

"[a] trial court's failure to remove a biased juror from a jury panel, as required by W. Va. Code § 62-3-3 (1949) (Repl. Vol. 2010), does not violate a criminal defendant's right to a trial by an impartial jury if the defendant removes the juror with a peremptory strike. In order to obtain a new trial for having used a peremptory strike to remove a biased juror from a jury panel, a criminal defendant must show prejudice. The holding in Syllabus point 8 of *State v. Phillips*, 194 W.Va. 569, 461 S.E.2d 75 (1995), is expressly overruled." Syllabus point 3, *State v. Sutherland*, 231 W. Va. 410, 745 S.E.2d 448 (2013).

Syl. Pt. 6, *State v. Benny W.*, __ W. Va. __, 837 S.E.2d 679 (2019).

offenses over an approximate twenty (20) year period, in this case, Defendant has a long criminal history which includes nineteen (19) felony convictions over an approximate thirteen (13) year period. Accordingly, due to the factual nature upon which the *Lane* Court rendered its decision, *Lane* is not applicable to this case.

The circuit court also distinguished this matter from *State v. Miller*, 184 W. Va. 462, 400 S.E.2d 897 (1990), and *State v. Kilmer*, 240 W. Va. 185, 808 S.E.2d 867 (2017), where this Court reversed the recidivist life sentences because the underlying felonies did not involve violence. In this matter, the circuit court noted that petitioner's increasingly dangerous criminal history, predicate felonies, and triggering offenses were violent in nature or had the potential for violence.

Considering West Virginia Code § 61-11-18(c), we recently held that

> [f]or purposes of a life recidivist conviction under West Virginia Code § 61-11-18(c), two of the three felony convictions considered must have involved either (1) actual violence, (2) a threat of violence, or (3) substantial impact upon the victim such that harm results. If this threshold is not met, a life recidivist conviction is an unconstitutionally disproportionate punishment under Article III, Section 5 of the West Virginia Constitution.

Syl. Pt. 12, *State v. Hoyle*, __ W. Va. __, 836 S.E.2d 817 (2019).

Recidivist statutes are the product of the Legislature and they are designed "to deter felony offenders, meaning persons who have been convicted and sentenced previously on a penitentiary offense from committing subsequent felony offenses." Syl. Pt. 3, in part, *State ex rel. Appleby v. Recht*, 213 W. Va. 503, 583 S.E.2d 800 (2002) (citation omitted). This Court has determined that a sentence cannot be enhanced unless the triggering (most recent) offense and at least one of the underlying predicate offenses involved "actual or threatened" violence. Thus, whether petitioner's life sentence is constitutional turns on whether his felony convictions are "qualifying convictions" such that at least one predicate offense involved violence or a threat of violence. In one of petitioner's predicate offenses, his 2012 conviction, he "was witnessed shooting a firearm near a stolen vehicle, and was found in the same location as a bulletproof vest, several firearms, and some ammunition." Accordingly, it is clear that at least one of petitioner's prior convictions involved actual violence. Applying the standard for imposing a life sentence under West Virginia Code § 61-11-18(c), we find that petitioner's life sentence is constitutional and refuse to disturb this life sentence where petitioner has been convicted of nineteen felonies – several of which have unquestionably been violent in nature or created the potential for violence.

Finally, petitioner argues that the circuit court committed reversible error in failing to suppress his audio statement. We have held that "[a] trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." Syl. Pt. 3, *State v. Vance*, 162 W. Va. 467, 250 S.E.2d 146 (1978).

Despite petitioner's claim on appeal that his consumption of methamphetamine on the day in question caused him to be too impaired to knowingly, voluntarily, and intelligently waive his *Miranda* rights, this claim is belied by his own testimony. Petitioner specifically testified that he consumed only a "miniscule" amount of drugs, that he was of "sound mind" on the night in

question, and that the methamphetamine had no influence on his actions. Petitioner's testimony is consistent with the testimony of Sgt. Hammack that petitioner was coherent, understood what was going on, and voluntarily waived his *Miranda* rights. Further, prior to denying the motion to suppress, the circuit court listened to the statement and considered the arguments regarding the admission of the statement. Here, applying our standard of review, we do not believe that the trial court's decision was plainly wrong or clearly against the weight of the evidence. Accordingly, we will not disturb the circuit court's decision to allow the admission of petitioner's statement.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 3, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice Margaret L. Workman

Chief Justice Armstead concurring:

I concur in the judgment of the Court affirming the circuit court's denial of Petitioner's Rule 35 motion, but I write separately because I believe the recidivist statute, West Virginia Code § 61-11-18(c) (2000), is clear and should be applied in accordance with its stated language. Under that statute, once it has been determined that a person has been convicted of three felonies, he is to be sentenced to the penitentiary for life. *See id.* The memorandum decision notes that Mr. Flanders' criminal history showed "nineteen (19) felony convictions over an approximate thirteen (13) year period." Had Mr. Flanders been sentenced to the penitentiary after he committed his third felony, he would have been unable to commit so many more.

Over the past thirty years this Court has imposed a myriad of additional requirements, none of which are included in the express language of the recidivist statute, that must be met before the recidivist statute may be applied. If this Court believed decades ago that the statute was unconstitutional, the proper course would have been to declare it so and provide the Legislature the opportunity to modify the statute to address the constitutional deficiencies. Instead, the Court has essentially "legislated" and imposed its own requirements, which have been applied in a varied and inconsistent manner. *See State v. Lane*, 241 W. Va. 532, 826 S.E.2d 657 (2019) (Armstead, J., dissenting).

The majority decision in this case bases its affirmation of the circuit court's holding on the fact that the Petitioner's past criminal history meets the additional requirements imposed by this Court, as recently outlined in *State v. Hoyle*, 242 W. Va. 599, 836 S.E.2d 817 (2019). While I agree with the majority's ultimate conclusion that the Petitioner's sentence should be affirmed, I would reach such holding by simply applying the recidivist statute as written. Mr. Flanders was convicted of three felonies, indeed many times over, and was properly sentenced to life in prison pursuant to the clear language of the statute. Accordingly, I concur in this Court's decision affirming the circuit court's denial of Petitioner's Rule 35 motion for the reasons stated in this separate opinion.