# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 21-0507** (Ritchie County CC-43-2019-F-45)

**Matthew S.,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Matthew S., by counsel Jordan West, appeals the Circuit Court of Ritchie County's May 12, 2021, order sentencing him to a term of incarceration for life, with mercy, following his conviction of third-offense domestic battery.[1] Respondent State of West Virginia, by counsel Patrick Morrisey and Scott E. Johnson, filed a response in support of the circuit court's order. On appeal, petitioner alleges that he received ineffective assistance of counsel and that his sentence is so disproportionate to the crime for which he was convicted that it constitutes cruel and unusual punishment.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

After his indictment on one count of third-offense domestic battery, petitioner's jury trial commenced in March of 2020. Relevant to this appeal, the State presented testimony from petitioner's mother, the victim of the crime in question. The victim testified that petitioner, while at her home on the morning of the battery, received a phone call that upset him and made him

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

"really angry." Petitioner requested that the victim drive him into town, which she told him she would do after changing clothes. When she entered her bedroom to dress, petitioner demanded that she leave the door open and repeatedly entered the room. Eventually, the victim re-entered the kitchen, at which point petitioner demanded that she sit down in a chair. According to the victim, petitioner "shoved the chair back" and "choked [her] then up against the wall." While petitioner grabbed the victim's neck, she was unable to breathe. When petitioner finally let go, the victim reminded petitioner that she had previously suffered from a stroke and told him that she "can't take this" and was "just too old for it." Despite her pleas, petitioner struck her in the chest with a walking stick. The victim started to cry. In response, petitioner reportedly "told [her] to get [herself] together or he was going to give [her] a slap down." The victim told petitioner to put his shoes on so that she could drive him where he wanted to go and then told him she was going to start the car. When she got to the vehicle, the victim locked it and began backing away from the home. Petitioner "tried to come to the car," but the victim was too far away for him to catch up. The victim then went to a relative's house and called 9-1-1. Both the relative and a responding officer testified at trial and confirmed that the victim was upset, afraid, and had visible injuries.

During the victim's testimony, the State played the recorded 9-1-1 call she made following the crime, during which she indicated that petitioner "choked [her] and . . . threatened to hit [her] with a chair." In the recording, the victim went on to indicate that she "imagine[d petitioner] threatened to kill [her]" and expressed that she was afraid. While on the phone with emergency services, the victim expressed fear that petitioner would follow her to the location where she called 9-1-1 and that, although law enforcement had been dispatched, "[i]t will be too late if he gets here." Ultimately, the jury convicted petitioner of the lone count from the indictment.

On the final day of petitioner's trial, the State filed a recidivist information in which it asserted that petitioner was previously convicted of two felonies. Specifically, the State indicated that petitioner was twice convicted of third-offense domestic battery, once in 2012 and once in 2014. According to the record, petitioner admitted to these prior convictions. At a sentencing hearing in August of 2020, the victim requested that the court have mercy on petitioner, as she asserted that he was taking medication to address his issues. The court also heard from several other individuals, including the following: (1) petitioner's ex-wife, who testified that petitioner frequently physically abused her, including while she was pregnant, and that his physical abuse caused her to have her child prematurely; (2) petitioner's stepson, who testified that petitioner was abusive and he feared petitioner, having seen him physically abuse the witness's mother; (3) petitioner's son, who testified that petitioner "put [him] through hell," struck him more times than he could remember, and attacked him so badly that he thought he would die; and, finally, (4) petitioner's daughter, who was so overcome with emotion that she required a short recess, after which she stated that she feared petitioner and witnessed him physically abusing her mother. Ultimately, the court sentenced petitioner to a term of incarceration of life, with mercy, pursuant to West Virginia Code § 61-11-18. Thereafter, petitioner was resentenced for purposes of appeal. It is from the circuit court's order reimposing this sentence that petitioner appeals.

We have previously held as follows:

"'The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus point 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997)." Syllabus Point 1, *State v. Booth*, 224 W.Va. 307, 685 S.E.2d 701 (2009).

Syl. Pt. 1, *State v. Kilmer*, 240 W. Va. 185, 808 S.E.2d 867 (2017).

On appeal, petitioner raises two assignments of error. In his first, petitioner alleges that he received ineffective assistance of trial counsel. However, we have previously held that

[i]t is the extremely rare case when this Court will find ineffective assistance of counsel . . . on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim.

Syl. Pt. 10, *State v. Triplett*, 187 W. Va. 760, 421 S.E.2d 511 (1992). Moreover, we have explained that

[t]he very nature of an ineffective assistance of counsel claim demonstrates the inappropriateness of review on direct appeal. To the extent that a defendant relies on strategic and judgment calls of his or her trial counsel to prove an ineffective assistance claim, the defendant is at a decided disadvantage. Lacking an adequate record, an appellate court simply is unable to determine the egregiousness of many of the claimed deficiencies.

*State v. Miller*, 194 W. Va. 3, 15, 459 S.E.2d 114, 126 (1995). In view of the difficulties posed in evaluating such claims at this stage, "[i]neffective assistance claims raised on direct appeal are presumptively subject to dismissal." *State v. Campbell*, -- W. Va. --, 868 S.E.2d 444, 457 (2022) (citation omitted). Accordingly, we decline to address in this appeal petitioner's claim that his trial counsel was ineffective because the record has not been developed on this issue. If petitioner desires to raise this issue, it must first be developed in a habeas corpus proceeding.

In his second assignment of error, petitioner argues that the circuit court erred in sentencing him so severely and disproportionately for the crime he was convicted of that his sentence constitutes cruel and unusual punishment. He contends, "Had it not been for the recidivism statute[, he] would have been sentenced to a maximum sentence of not less than one nor more than five years." So, he implies, any sentence in excess of that is unconstitutionally excessive. Petitioner also argues that the injuries he inflicted upon his mother were minimal, and he contends that the court indicated a "clear bias" against him by referring to him as "Mad Dog Matthew" and telling him that "[i]f you would have been a dog, they would have put you down a long time ago."

3

Indeed, petitioner is correct that, ordinarily, the punishment for third-offense battery—where applicable—is a term of incarceration of one to five years. *See* W. Va. Code § 61-2-28(d). But petitioner was not sentenced simply for third-offense domestic battery; he was sentenced as a recidivist, so the applicable sentence is found in the recidivist statute, West Virginia Code § 61-11-18(d).[2] When his sentence is placed in the proper context, petitioner's proportionality challenge fails for several reasons. First, this Court has upheld the constitutionality of the recidivist statute generally. *See* Syl. Pt. 3, *Martin v. Leverette*, 161 W. Va. 547, 244 S.E.2d 39 (1978) ("Selective enforcement by a prosecutor of the habitual criminal statute, W.Va.Code, 61-11-18, and the enhanced sentence provided thereunder, are not per se violative of the Equal Protection or Cruel and Unusual Punishment Clauses of the West Virginia or the United States Constitutions.").

Second:

> Where an accused is convicted of an offense punishable by confinement in the penitentiary and, after conviction but before sentencing, an information is filed against him setting forth one or more previous felony convictions, if the jury find or, after being duly cautioned, the accused acknowledges in open court that he is the same person named in the conviction or convictions set forth in the information, *the court is without authority to impose any sentence other than as prescribed in Code, 61-11-18*, as amended.

*State v. Norwood*, 242 W. Va. 149, 157, 832 S.E.2d 75, 83 (2019) (quoting Syl. Pt. 3, *State ex rel. Cobb v. Boles*, 149 W. Va. 365, 141 S.E.2d 59 (1965); Syl. Pt. 3, *State ex rel. Daye v. McBride*, 222 W. Va. 17, 22, 658 S.E.2d 547, 552 (2007)) (emphasis added). Stated another way, "the punishment for the third felony conviction *is an automatic life sentence regardless of the*

---

[2]According to West Virginia Code § 61-11-18(d),

> [w]hen it is determined, as provided in § 61-11-19 of this code, that such person shall have been twice before convicted in the United States of a crime punishable by imprisonment in a state correctional facility which has the same or substantially similar elements as a qualifying offense, the person shall be sentenced to imprisonment in a state correctional facility for life: Provided, That prior convictions arising from the same transaction or series of transactions shall be considered a single offense for purposes of this section: Provided, however, That an offense which would otherwise constitute a qualifying offense for purposes of this subsection and subsection (b) of this section shall not be considered if more than 20 years have elapsed between that offense and the conduct underlying the current charge.

On appeal, petitioner does not dispute that all of the crimes upon which his life sentence was predicated are valid qualifying offenses that occurred well within twenty years of his triggering offense.

*nature of the penalty for the underlying third felony.*" *State v. Lane*, 241 W. Va. 532, 539, 826 S.E.2d 657, 664 (2019) (emphasis added) (citation omitted). While petitioner surely would have preferred to have been sentenced in a vacuum without consideration of his repeated felony offenses or the explicit requirements of the recidivist statute, the pronouncements quoted above make clear that the court was required to impose a life recidivist sentence.

On appeal, petitioner would have this Court simply compare the sentence for third-offense domestic battery to the sentence the circuit court imposed and conclude that the disparity between the two automatically renders his sentence unconstitutional. This is not the appropriate analysis. Instead, we note the following:

> "The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5, will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute." Syllabus Point 7, *State v. Beck*, 167 W.Va. 830, 831, 286 S.E.2d 234 (1981).

*Kilmer*, 240 W. Va. at 185, 808 S.E.2d at 868, Syl. Pt. 3. These guidelines were recently modified by syllabus point 12 of *State v. Hoyle*, 242 W. Va. 599, 836 S.E.2d 817 (2019), where we held as follows:

> For purposes of a life recidivist conviction under West Virginia Code § 61-11-18(c), two of the three felony convictions considered must have involved either (1) actual violence, (2) a threat of violence, or (3) substantial impact upon the victim such that harm results. If this threshold is not met, a life recidivist conviction is an unconstitutionally disproportionate punishment under Article III, Section 5 of the West Virginia Constitution.

The record shows that this was petitioner's *third* conviction for *third-offense* domestic battery and that the triggering crime involved both actual and threatened violence to petitioner's mother, an elderly individual who suffered a stroke prior to the violence petitioner perpetrated against her. Further, several individuals, including petitioner's children, testified to his past physical abuse and its impact on them and their loved ones. As the recidivist statute "is directed at persons who persist in criminality after having been convicted and sentenced once or twice, as the case may be, on a penitentiary offense," *Norwood*, 242 W. Va. at 151, 832 S.E.2d at 76, Syl. Pt. 5, in part, petitioner is the *exact* type of perpetrator the recidivist statute was designed to address.

We find further that petitioner's attempts to gloss over his violent conduct and his claim that the sentencing court was biased are similarly unavailing. Petitioner's focus on the perceived severity of the injuries he inflicted upon his own mother ignores not only other probative evidence concerning the impact of his conduct on her and his past abuses, but also the fact that

the "primary analysis" in these types of challenges is whether the subject offenses involved actual or threatened violence. Unquestionably, they did. Whether petitioner could have battered his mother more severely is immaterial, and we refuse to accept petitioner's minimization of his conduct during both the triggering offense and throughout the domestic batteries he has serially perpetrated.

Likewise, his claim of "clear bias" is unavailing. Critically, petitioner failed to include any authority concerning bias from a sentencing court. As the Supreme Court has noted,

> [t]he judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task.

*Liteky v. U.S.*, 510 U.S. 540, 550-51 (1994). While the language to which petitioner cites may demonstrate an ill disposition toward him, petitioner has failed to establish anything close to bias. Further, petitioner also fails to even attempt to explain how this alleged bias prejudiced him below. Importantly, petitioner ignores the fact that the circuit court was without discretion to deviate from the commands of West Virginia Code § 61-11-18(d). That statute directs, in relevant part, that

> [w]hen it is determined . . . that such person shall have been twice before convicted in the United States of a crime punishable by imprisonment in a state correctional facility which has the same or substantially similar elements as a qualifying offense, the person shall be sentenced to imprisonment in a state correctional facility for life.

*Id.* These circumstances were met, so petitioner was subject to an "automatic life sentence." *Lane*, 241 W. Va. at 539, 826 S.E.2d at 664 (citation omitted).

Finally, in *State v. Mauller*, No. 19-0829, 2020 WL 4355079 (W. Va. July 30, 2020)(memorandum decision), this Court upheld a recidivist life sentence in almost identical circumstances. There, the triggering offense was domestic battery, third or subsequent offense, and the two predicate offenses were domestic battery, third or subsequent offense. *Id.* at *2. We found that the defendant's recidivist life sentence was constitutional because "any fool would know that his conduct was within the reach of the recidivist statute, because any reasonable person would know that his repeated acts of domestic violence are forbidden by the law." *Id.* at *4 (citation omitted). As such, petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 12, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: August 31, 2022


**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn