**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**
**November 19, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 19-0109 (Cabell County 17-F-14 and 18-F-275)**

**Joshua Dwayne Plante,**
**Defendant Below, Petitioner**


**MEMORANDUM DECISION**

Petitioner Joshua Plante, by counsel A. Courtenay Craig, appeals from the January 11, 2019, order imposing a life sentence and the January 24, 2019, amended order of commitment entered by the Circuit Court of Cabell County sentencing him upon his conviction of possession with intent to deliver a controlled substance to a term of imprisonment of one to fifteen years and for his conviction of third offense of a felony under West Virginia Code § 61-11-18(c) (2000),[1] our recidivist statute, a life sentence with mercy to run concurrent with the first sentence imposed. Respondent State of West Virginia ("the State"), by counsel Scott E. Johnson, filed a response. On appeal, petitioner argues that insufficient evidence was presented to the jury to uphold his conviction of possession with intent to deliver a controlled substance and that the imposition of a recidivist life sentence is constitutionally disproportionate to his conduct.

After considering the parties' written and oral arguments, as well as the record on appeal and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 19, 2016, petitioner was arrested at the home of his former girlfriend, Chandra Harmon, on a warrant for murder. At the time he was arrested, petitioner was found to be in possession of approximately $100 and approximately three grams of heroin.

---

[1] The Legislature amended West Virginia Code § 61-11-18, effective June 5, 2020, making substantial changes to the recidivist statute. The amended statute, however, is not applicable to the instant case.

1

Based upon this possession, law enforcement applied for and received a warrant for the petitioner's residence, 325 Olive Street, Huntington, West Virginia, which he shared with his sister, Shaina, and which he registered as his residence with federal probation.[2] Police officers with the Huntington Police Department executed the warrant and recovered digital scales, multiple cell phones, cocaine base, heroin, sandwich baggies, $320, multiple guns, and ammunition, all located in various places in the home.

Petitioner was indicted on one count of murder,[3] and one count of possession with intent to deliver.[4] The two counts were severed by the circuit court and the petitioner was tried first on the possession with intent to deliver count.

Petitioner's trial began on August 6, 2018. Prior to selecting a jury, the circuit court read the following stipulations to the jury, which had been agreed to by both the State and petitioner:  1) the exhibits of physical evidence to be introduced, including but not limited to the drugs, guns, ammunition and digital scales, were admissible without the State establishing a chain of custody; 2) petitioner was lawfully arrested by the Huntington Police Department on an unrelated matter and was lawfully searched incident to this arrest; 3) petitioner resided at 325 Olive Street, Huntington, Cabell County, West Virginia, at the time of his arrest; 4) petitioner's residence at 325 Olive Street, Huntington, West Virginia, was lawfully searched and the items therein were lawfully seized by the Huntington Police Department.

The witnesses who testified for the State included Det. Stephen Maniskas with the Huntington Police Department. Det. Maniskas testified that on June 19, 2016, he was contacted by Det. Dakota Dishman, also with the Huntington Police Department, who gave him the address of petitioner's former girlfriend and asked him to go to that address to be on the lookout for petitioner because he was wanted on an unrelated murder charge.[5] The

---

[2] A search warrant was also executed at petitioner's former girlfriend's residence where he was arrested, but no contraband was found.

[3] The murder count is wholly unrelated to the possession with intent to deliver count, which is the subject of the instant appeal.  There were no facts regarding the murder count in the appendix record.

[4] Petitioner's sister was jointly charged with him on this count. Petitioner was not charged for the heroin he possessed at the time of his arrest.

[5] Det. Dishman also testified and corroborated the testimony of Det. Maniskas in this regard.  Det. Dishman also obtained the search warrant for petitioner's residence, which included searching for items related to possession with intent to deliver.  Det. Dishman stated that there was no evidence that the heroin found on petitioner at the time he was arrested was the same heroin seized from petitioner's residence.

detective, along with other detectives, went to the address and undertook surveillance. The officers observed petitioner leaving the residence and proceeded to arrest him. Det. Maniskas testified that petitioner was searched and money, three grams of heroin, a cigar box, as well as several other items were found. Det. Maniskas testified that three grams of heroin is not consistent with personal use. According to Det. Maniskas, a typical dosage unit for heroin is a tenth or two-tenths of a gram. Thus, the three grams of heroin found on petitioner represented about thirty doses. Moreover, petitioner had no other items on his person indicating personal use such as needles, spoons, or tie-off material or evidence that he was snorting. Det. Maniskas testified that petitioner did not have the appearance of a heroin addict.

Following petitioner's arrest, the police obtained and executed a search warrant on his residence. Det. Maniskas testified that as a result of this search officers seized digital scales, multiple cell phones, a baggy containing heroin, a baggy containing cocaine base, other sandwich baggies, multiple firearms, including pistols and rifles with live ammunition, and $320. Det. Maniskas testified that the digital scales were found in the living room, along with two cell phones. A third cell phone was found on the porch. Heroin was located in the kitchen. Various guns, including a Glock pistol and an AK-47, along with cocaine, were found in one of the bedrooms. Det. Maniskas explained that the presence of digital scales, plastic baggies, money, firearms, and multiple cell phones are indicative of an intent to deliver. The State specifically asked the detective, "[i]n your experience as investigating drug cases, with those amount of items in your house, no indicia of personal use on you and the amount of drugs he had on him, does that lend itself more to personal use or intent to deliver?" Det. Maniskas answered, "[i]ntent to deliver, sir." The detective was also questioned regarding whether suspected drug dealers respect bedroom boundaries and whether a drug dealer's bedroom is the only place where evidence would be located. Det. Maniskas stated that it is typically "[t]hroughout the residence." He further testified that sometimes evidence is located in a certain spot and other times it is "strewn throughout the residence[,]" including children's bedrooms.

The State also called Huntington Police Lt. David Castle, who supervised the forensic investigations unit. Lt. Castle corroborated Det. Maniskas' testimony as to the items found at petitioner's residence and where the items were located. During cross-examination, Lt. Castle added that firearms and cocaine were found in what appeared to be a female's bedroom.[6]

Petitioner presented testimony from his mother, Carmon Plante. Ms. Plante stated that the reason her son listed his sister's residence, the Olive Street address, as his official residence was because he was on probation; however, petitioner also spent time at her home and other places, including his former girlfriend's home and the home of another woman

---

[6] At the close of the State's case, petitioner moved the circuit court for a judgment of acquittal, which was denied.

named Elizabeth Bolton. Ms. Plante testified that she had given her son "at least $2,000" to purchase clothes and other items when he returned after being released from incarceration. She also stated that she and her son had been at his residence the day before his arrest and she did not see any contraband in the home.

Petitioner next called Chandra Harmon, his former girlfriend, who testified that petitioner spent most nights at her residence, which is where he was initially arrested.[7]

At the close of all the evidence, the case was submitted to the jury. The jury found petitioner guilty of possession of heroin with intent to deliver.

Immediately after the jury returned its verdict, the State filed a Recidivist Information. In addition to the above-mentioned conviction, the State charged petitioner with having previously been convicted of the federal felony offense of possession with intent to distribute cocaine base and the federal felony offense of possession of a firearm not registered to defendant in the National Firearms Registration and Transfer Record. Regarding his prior federal felonies, petitioner was convicted in federal court on October 19, 2009, for possession with intent to distribute cocaine base. Less than six months after being released from federal custody for this conviction, petitioner was convicted of possession of firearms not registered to him. Petitioner was accused of trafficking firearms and admitted to "selling a .22 pistol, a .22 rifle, a 9 mm pistol, and a modified shotgun." He was sentenced to seventy months in prison followed by three years of supervised release for the firearms conviction. It was less than a month after being released from federal custody for his second conviction that he was arrested on the charges in the instant appeal.

On December 4, 2018, petitioner's counsel admitted to the circuit court that petitioner had "no good faith reason to suggest that [the petitioner] is not the person that was previously convicted twice before he was convicted this time." Petitioner, however, contended that none of his three convictions (the triggering State felony or the two federal felonies) were crimes of violence so that imposition of a life recidivist sentence was constitutionally impermissible.

The circuit court ordered the parties to brief the issue of the constitutional permissibility of imposing a life recidivist sentence on the petitioner. After the issue was

---

[7] Further, as part of petitioner's defense that the drugs and contraband found in his residence did not belong to him, petitioner, in cross-examination of Det. Dishman, also tried to establish that other individuals had been at his residence prior to the search. Det. Dishman stated that in the prior twenty-four hours before the search there was surveillance video taken outside the residence that showed two unidentified African American males "associated with that residence within 24 hours of that search."

briefed, the circuit court held a hearing on January 8, 2019. During the hearing, petitioner admitted that he was the same individual named in the information. By order entered on January 11, 2019, the circuit court imposed a life recidivist sentence on petitioner. Thereafter, on January 24, 2019, the circuit court entered an amended order of commitment.  It is from this order that petitioner appeals.

Petitioner raises two assignments of error. The first alleged error involves the sufficiency of the evidence to support petitioner's conviction for possession with intent to deliver heroin. We apply the following standard of review to this issue:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.
>
> . . . .
>
> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt.  Credibility determinations are for a jury and not an appellate court.  Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. Pts. 1 and 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).  We further held that

> [w]hen a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer

5

must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.

Syl. Pt. 2, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996).

Relying on *State v. Dudick*, 158 W. Va. 629, 213 S.E.2d 458 (1975), petitioner argues that there was insufficient evidence to support his conviction for possession with intent to deliver. In *Dudick*, the Court held in syllabus points three and four:

In West Virginia mere physical presence on premises in which a controlled substance is found does not give rise to a presumption of possession of a controlled substance, but is evidence to be considered along with other evidence demonstrating conscious dominion over the controlled substance.

The offense of possession of a controlled substance also includes constructive possession, but the State must prove beyond a reasonable doubt that the defendant had knowledge of the controlled substance and that it was subject to defendant's dominion and control.

*Id*. at 630, 213 S.E.2d at 460, Syl. Pts. 3 and 4.[8] Petitioner contends that the State failed to present direct evidence that he had knowledge of the drugs or any of the items found at his residence, and further failed to prove that he exercised dominion and control over the heroin. Petitioner also argues that the State did not even show that he was "ever in the residence at the same time the charged heroin was." He argues that not only had his mother failed to observe any contraband at his home prior to the search and his arrest, but that there were other individuals at his home within twenty-four hours of the search who could have possessed the drugs.

---

[8]Significantly, in *Dudick*, unlike the instant case, substantial evidence was introduced that, although the defendant had paid rent on the apartment where marihuana was found, the defendant did not live there, and had moved all of his belongings to a friend's apartment where he resided. 158 W. Va. at 643, 213 S.E.2d at 466.

Petitioner was charged with possession with intent to deliver heroin, which requires that the State prove that he unlawfully and feloniously possessed a Schedule I narcotic controlled substance, i.e. heroin, with intent to deliver the controlled substance to another person. *See* W. Va. Code § 60A-4-401 (providing in relevant part, that "it is unlawful for any person to . . . deliver, or possess with intent to . . . deliver, a controlled substance.").[9] In *State v. Drake*, 170 W. Va. 169, 291 S.E.2d 484 (1982), we held that "possession with intent to deliver a controlled substance can be proven by establishing a number of circumstances among which are the quantity of the controlled substance possessed and the presence of other paraphernalia customarily used in the packaging and delivery of controlled substances." *Id*. at 170, 291 S.E.2d at 485, Syl Pt. 4, in part.

In the instant case, the State introduced evidence that when petitioner was initially arrested, he possessed three grams of heroin,[10] which Det. Maniskas testified was an amount inconsistent with personal use but represented about thirty doses. The detective further testified that petitioner did not have the appearance of a heroin addict and did not have any other items indicating personal use of drugs, such as needles, spoons or tie-off material. Petitioner stipulated to the jury that he resided at 325 Olive Street in Huntington, that his residence was lawfully searched and that the items and contraband found therein, including a baggy containing heroin, a baggy containing cocaine base, multiple firearms, including pistols and rifles with live ammunition, multiple cell phones and $320 were lawfully seized. Det. Maniskas stated the items seized were indicative of intent to deliver. Based upon all the evidence, taken as a whole and in a light most favorable to the State, there was sufficient evidence to support petitioner's conviction of possession with intent to deliver.

---

[9] The Legislature amended West Virginia Code § 60A-4-401, effective June 5, 2020; however, the amendments do not affect this case.

[10] In his brief, petitioner repeatedly refers to the three grams of heroin which were found on his person when he was first arrested, but for which he was not charged, as "404(b) evidence." *See* W. Va. R. Evid. 404(b). The entirety of his argument on this point is contained in two short sentences: "404(b) specifically prohibits the use of conduct to show Mr. Plante acted in conformity with the charged conduct. There was nothing to suggest a pattern, motive, or lack of mistake, and no legally required uses by the State were identified." However, petitioner raises no assignment of error regarding this evidence and there is no development of his two-sentence set forth above. *See State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) (stating that "appellate courts frequently refuse to address issues that appellants . . . fail to develop in their brief."). Further, petitioner failed to object to this evidence before the circuit court and, therefore, any argument related to Rule 404(b) is waived. *See Coleman v. Sopher*, 201 W. Va. 588, 614, 499 S.E.2d 592, 618 (1997) (McHugh, J., concurring); *see also* W. Va. R. App. P. 10(c)(7).

Petitioner's second alleged error concerns whether the circuit court's imposition of a recidivist life sentence was constitutionally disproportionate. Sentencing orders are reviewed "'under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus Point 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997)." Syl. Pt. 1, *State v. Kilmer*, 240 W. Va. 185, 808 S.E.2d 867 (2017).

At its core, petitioner's somewhat convoluted argument is that unless his conduct involves "actual violence," the imposition of a recidivist life sentence is unconstitutionally disproportionate. He contends that "West Virginia has never legislated or enunciated a bright-line rule regarding what offenses require imposition of a life-recidivist sentence. In fact, a majority of the jurisprudence overlooks what is the closest to a bright-line standard regarding the matter: the presence of, threat of, or use of violence." Petitioner claims that this lack of any bright-line rule requiring "evidence of violence" has allowed the Court to find "non-violent heroin offenses" to suddenly be violent offenses. In this regard, petitioner focuses upon the Court's countervailing decisions in *State v. Lane*, 241 W. Va. 532, 826 S.E.2d 657 (2019), and *State v. Norwood*, 242 W. Va. 149, 832 S.E.2d 75 (2019), which were rendered just two months apart. In *Lane*, the Court reversed a recidivist life sentence, determining that the final triggering felony committed by the petitioner therein, which was the delivery of four Oxycodone pills as part of a controlled buy, did not involve any actual or threatened violence. 241 W. Va. at 539, 826 S.E.2d at 664. In *Norwood*, however, we concluded that the final triggering offense of delivery of the controlled substance heroin supported the imposition of a recidivist life sentence. 242 W. Va. at 158, 832 S.E.2d at 84. The Court found that "[t]he drug transaction itself did not directly result in actual violence. However, due to the nature of the drug transaction, and the drug that was the subject of the transaction, this Court concludes that there was an inherent threat of violence." *Id*. Based upon these divergent resolutions, petitioner argues that it was error for the circuit court to impose a recidivist life sentence because he never committed a crime of violence.[11]

---

[11] Petitioner also argues, relying upon the recent United States Supreme Court's decisions in *Johnson v. United States*, 576 U.S. 591 (2015), and *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018), which found under principles of statutory construction that two separate federal statutes were void for vagueness, that "without a precise definition of a crime of violence, any subsequent attempt to make 'violent' crimes which are not inherently so, or factually contain actual violence, merely because they show a perceived potential for violence is vague, ambiguous, an arbitrarily enforced." In other words, he argues that if his conduct in the instant case does not arise to "actual violence under West Virginia law, the Court's test in *Norwood* is too vague and arbitrary."

We find this argument unavailing for two significant reasons. First, we have already determined that the language of our recidivist statute, West Virginia Code § 61-11-18, is plain and unambiguous. *See State ex rel. Appleby v. Recht*, 213 W. Va. 503, 519, 583

8

Critical to the resolution of the issue before us is the case of *State v. Hoyle*, 242 W. Va. 599, 836 S.E.2d 817 (2019), *cert. denied*, 140 S. Ct. 2586 (2020), which was decided after the filing of the parties' respective briefs.[12] In *Hoyle*, the petitioner was given a recidivist life sentence based upon convictions for kidnapping and sexual assault in the second degree (considered a single crime by the circuit court), first offense failure to register as a sex offender, and second offense failure to register as a sex offender. The petitioner claimed that the imposition of a recidivist life sentence for the triggering felony offense of second offense failure to register under the West Virginia Sex Offender Act,[13] was unconstitutionally disproportionate because failure to update was an offense that neither involved actual or threatened violence nor imposed "some substantial impact upon the victim such that harm results." *See* 242 W. Va. at 615, 836 S.E.2d at 833. We agreed with the petitioner in *Hoyle*, finding that his life recidivist sentence was unconstitutionally disproportionate. *Id.* at 616, 836 S.E.2d at 834.

---

S.E.2d 800, 816 (2002)(quoting *State ex rel. Chadwell v. Duncil*, 196 W.Va. 643, 647, 474 S.E.2d 573, 577 (1996))(providing "[w]e have previously recognized that West Virginia Code § 61-11-18 is 'plain and unambiguous. . . .'"). Second, neither *Johnson* nor *Sessions*, the Supreme Court decisions relied upon by petitioner, involve a recidivist statute, and the principles of statutory construction contained in those cases are inapplicable to resolve the issue presented herein: whether, under the facts and circumstances of this case, the imposition of a life sentence under our recidivist statute is constitutionally disproportionate.

We also decline the State's invitation to discard all of our jurisprudence regarding the application of West Virginia's recidivist statute and to hold that the "the federal gross-disproportionality test under the Eighth Amendment is the only test to be applied by West Virginia State Courts in addressing claimed disproportionate sentencing." *See Ewing v. California*, 538 U.S. 11, 23 (2003) (quoting, in part, *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy J., concurring in part and concurring in judgment) (quoting, in part, *Solem v. Helm*, 463 U.S. 277, 288 (1983) ("The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.").

[12] Petitioner acknowledged to the Court during oral argument that the *Hoyle* decision has resolved the conflict between *Lane* and *Norwood*. Further, this Court has repeatedly found that "[c]oncededly, the general rule in this country is to apply new law retroactively to cases that were pending on direct appeal at the time the new rule was adopted. Thus, appellate courts are obliged to apply the law as they find it at the time of the judgment." *State v. Blake*, 197 W. Va. 700, 711-12, 478 S.E.2d 550, 561-62 (1996).

[13] *See* W. Va. Code §§ 15-12-1 to -10.

In reaching this conclusion in *Hoyle*, the Court began its examination of whether the recidivist life sentence was constitutionally disproportionate by first looking at the relevant statute, which is where we begin our review in the instant case. West Virginia Code § 61-11-18(c) provides for the imposition of a life sentence "[w]hen it is determined . . . that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life." *Id.*; *accord Hoyle*, 242 W. Va. at 614, 836 S.E.2d at 832.

We first recognized our recidivist statute as "among the most draconian in the nation[]" in *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205(1981), however, we have upheld the statute on numerous occasions against constitutional challenges. *Id.* at 536, 276 S.E.2d at 213; s*ee, e.g., State v. Vance*, 164 W. Va. 216, 262 S.E.2d 423 (1980) (cruel and unusual punishment/proportionality challenge); *Martin v. Leverette*, 161 W. Va. 547, 244 S.E.2d 39 (1978) (equal protection challenge).

We reiterated the *Wanstreet* holding, in *Hoyle*, as follows:

> "While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Syllabus Point 4, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981).

242 W. Va. at 603, 836 S.E.2d at 821, Syl. Pt. 10. Following *Wanstreet*, we adopted the following test to use in ascertaining whether a life recidivist sentence is appropriate under a constitutional proportionality challenge:

> "The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5, will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the statute." Syllabus Point 7, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981).

*Hoyle*, 242 W. Va. at 603, 836 S.E.2d at 821, Syl. Pt. 11.

Since *Beck*, there had been little development in our analytical approach undertaken to determine whether a recidivist life sentence is constitutionally proportionate until *Hoyle*. In *Hoyle*, with specific emphasis on the inconsistent decisions reached by the Court in *Norwood* and *Lane*, discussed *supra* in greater detail, we recognized the need for consistency in our law. 242 W. Va. at 615, 836 S.E.2d at 833. In order to correct the *Lane/Norwood* conflict, we held in syllabus point twelve of *Hoyle* that

> [f]or purposes of a life recidivist conviction under West Virginia Code § 61-11-18(c), two of the three felony convictions considered must have involved either (1) actual violence, (2) a threat of violence, or (3) substantial impact upon the victim such that harm results. If this threshold is not met, a life recidivist conviction is an unconstitutionally disproportionate punishment under Article III, Section 5 of the West Virginia Constitution.

242 S.E.2d at 603, 836 S.E.2d at 821, Syl. Pt. 12.

Applying the *Hoyle* test to the facts of this case, we conclude that petitioner's recidivist life sentence must be upheld. The triggering felony of possession with intent to deliver heroin is a crime that involves "substantial impact upon the victim such that harm results." *Id.*; *see State v. Gaskins*, No. 18-0575, 2020 WL 3469894, at *4 (W. Va. June 25, 2020) (memorandum decision) (finding "petitioner's prior convictions of delivery of a controlled substance, specifically cocaine, has a substantial impact on the victim of the crime."). Further, petitioner's prior felony conviction of the federal felony offense of possession with intent to distribute cocaine base, like his triggering felony, involves "substantial impact upon the victim such that harm results." *Id.* at 603, 836 S.E.2d at 821, Syl. Pt. 12. Finally, petitioner's conviction for possession of a firearm not registered to defendant in the National Firearms Registration and Transfer Record unquestionably involves a serious crime that endangers the public. This conviction therefore also involves a threat of violence, or substantial impact upon the victim such that harm results under *Hoyle*. *Id.* Accordingly, we conclude that the sentence imposed by the circuit court was not an unconstitutionally disproportionate punishment under Article III, Section 5 of the West Virginia Constitution.

For the foregoing reasons, we affirm.

Affirmed.

11

**ISSUED:** November 19, 2020

**CONCURRED IN BY:**

Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**CONCURRING AND WRITING SEPARATELY**:

Chief Justice Tim Armstead

Chief Justice Armstead concurring**:**

The petitioner has raised two assignments of error in this case. First, he challenges whether there was sufficient evidence to support his conviction for possession with the intent to deliver heroin. The majority opinion sets forth, in great detail, the evidence that was introduced at trial to prove the Petitioner's guilt of this charge. I fully concur with the majority's holding that "[b]ased upon all the evidence, taken as a whole and in a light most favorable to the State, there was sufficient evidence to support petitioner's conviction of possession with intent to deliver."

In his second assignment of error, petitioner challenges whether the circuit court's imposition of a recidivist life sentence was constitutionally disproportionate. I concur with the majority's decision insofar as it upholds the circuit court's imposition of a recidivist life sentence.[14] I write separately because I firmly believe that the imposition of the recidivist life sentence in this case is proper pursuant to the clear language of the recidivist statute, separate and apart from the test established in *Hoyle.*

West Virginia Code § 61-11-18 (2000) provides, in pertinent part:

> (c) When it is determined, as provided in section nineteen of this article, that such person shall have been twice before convicted in the United States of a crime punishable by

---

[14] I do not disagree with the finding within the decision that, *applying the test set forth in State v. Hoyle, 242 W. Va. 599, 836 S.E.2d 817 (2019)*, the Petitioner's prior offenses meet such standard and his recidivism conviction must be affirmed. However, as set forth in this separate opinion, I believe the true standard that should be applied is that standard set forth in the statute itself.

12

confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life.

While the Court, has repeatedly modified the standard to be applied in imposing a recidivist sentence, the language of the statute is clear and unambiguous. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951). "Where the language of a statute is plain and unambiguous, there is no basis for application of rules of statutory construction; but courts must apply the statute according to the legislative intent plainly expressed herein" Syl. Pt. 1, *Dunlap v. State Compensation Director,* 149 W.Va. 266, 140 S.E.2d 448 (1965).

As the majority decision points out, this Court has, over the past four decades, issued a number of opinions imposing additional qualifications, none of which are included in the express language of the recidivist statute, that must be met for the imposition of recidivist sentences. As I noted in my dissent in *State v. Lane*, I believe the recidivist statute should be applied as written and that the additional requirements imposed in *Wanstreet* and its progeny, including *State v. Beck*[15] and *Hoyle* are beyond the scope of the statutory requirement. *See State v. Lane*, 241 W. Va. 532, 826 S.E.2d 657 (2019) (Armstead, J., dissenting).[16]

The majority decision upholds the Petitioner's recidivism conviction based upon an analysis of the factors set forth in *Hoyle,* which was adopted by a majority of this Court in 2019. While I believe the plain language of the recidivist statute should be applied, without looking to the additional qualifying factors contained in *Hoyle*, the Petitioner's recidivism conviction is proper whether we apply the plain language of the statute or the *Hoyle* factors. The majority decision aptly recounts the Petitioner's criminal record giving rise to the recidivist conviction:

In addition to the [possession of heroin with intent to deliver] conviction, the State charged petitioner with having

---

[15] *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981) (holding that the offenses giving rise to the recidivist life sentence should be analyzed to determine "if they involve actual or threatened violence to the person")

[16] During the 2020 Regular Session of the West Virginia Legislature, the Legislature made significant modifications to the recidivism statute. These revisions include specifically enumerated crimes that are considered qualifying offenses for imposition of a recidivist sentence and limitations on the recency of prior offenses that would give rise to such recidivist sentences. However, the 2020 revised statute does not govern the current case.

previously been convicted of the federal felony offense of possession with intent to distribute cocaine base and the federal felony offense of possession of a firearm not registered to defendant in the National Firearms Registration and Transfer Record. Regarding his prior federal felonies, petitioner was convicted in federal court on October 19, 2009, for possession with intent to distribute cocaine base. Less than six months after being released from federal custody for this conviction, petitioner was convicted of possession of firearms not registered to him. Petitioner was accused of trafficking firearms and admitted to "selling a .22 pistol, a .22 rifle, a 9 mm pistol, and a modified shotgun." He was sentenced to seventy months in prison followed by three years of supervised release for the firearms conviction. It was less than a month after being released from federal custody for his second conviction that he was arrested on the charges in the instant appeal.

Based on this record, the majority decision concludes that both the triggering felony of possession with intent to deliver heroin and the prior felony offense of possession with intent to distribute cocaine base are crimes that involve "substantial impact upon the victim such that harm results." In addition, the majority decision concludes that the petitioner's prior felony conviction of possession of a firearm not registered to the petitioner in the National Firearm Registration and Transfer Record involves a "threat of violence, or substantial impact upon the victim such that harm results."

It is clear that each of these offenses would also require the petitioner's conviction under a plain reading of the recidivism statute, absent and apart from the additional standards required by *Wanstreet* and its progeny, including *Hoyle*. Again, while I agree with the decision to affirm the Petitioner's lifetime recidivism conviction, I would rely on the clear language of the statute itself to affirm such conviction.

Accordingly, I concur in the Court's decision affirming petitioner's sentence for the reasons stated in this separate opinion.