# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 19-0016** (Fayette County 18-F-28 and 18-F-163)

**David L. Ingram,**
**Defendant Below, Petitioner**

**FILED**
**November 19, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner David L. Ingram, by counsel, Matthew Brummond, appeals from an order of the Circuit Court of Fayette County entered on December 10, 2018, sentencing him upon his conviction of one count of delivery of cocaine, a Schedule II narcotic, and one count of delivery of methamphetamine, a Schedule II narcotic, in violation of West Virginia Code § 60A-4-401 (2020). The State of West Virginia, by counsel, Gordon L. Mowen, II and Mary Beth Niday, filed a response. On appeal, Petitioner challenges the validity of his sentence, contending that under the facts and circumstances of this case, a sentence of life imprisonment with mercy imposed pursuant to West Virginia Code § 61-11-18(c) (2000),[1] our recidivist statute, is constitutionally disproportionate to the offenses.

After considering the parties' written and oral arguments, as well as the record on appeal and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The facts of this case are straightforward. On April 12, 2017, a confidential informant (hereinafter "the CI"), cooperating with the Oak Hill Police Department and the Central West Virginia Drug Task Force in exchange for a non-prosecution agreement on drug-related charges, purchased 0.383 grams of cocaine from Petitioner for fifty dollars. The purchase took place inside Petitioner's home at Shiloh Mobile Home Park in Fayette

---

[1] Effective June 5, 2020, the Legislature amended West Virginia Code § 61-11-18, making substantial changes to the recidivist statute. Unless specifically noted, all references in this opinion to the statute or its subsections are to the earlier version; at oral argument, both parties agreed that the amended version does not apply to the instant case.

1

County, West Virginia, and the CI was equipped with a camera at the time of the transaction. Thereafter, on April 18, 2017, the CI purchased 0.510 grams of methamphetamine from Petitioner for sixty dollars. This purchase took place inside Petitioner's vehicle, which was located in the parking lot at the Dollar Tree in Oak Hill, Fayette County, West Virginia, and the CI was equipped with a recording device at the time of the transaction.

On January 10, 2018, Petitioner was indicted on two charges, delivery of cocaine and delivery of methamphetamine, both Schedule II controlled substances, in violation of West Virginia Code § 60A-4-401. On August 31, 2018, at the conclusion of a one-day trial, Petitioner was convicted on both counts in the indictment. Four days later, on September 4, 2018, the State filed a Recidivist Information and an Amended Recidivist Information[2] alleging that Petitioner had previously been convicted of two felonies: non-aggravated robbery, which offense took place in 1997, and attempt to commit third offense shoplifting, which offense took place in 2015.

On October 1, 2018, the circuit court held a hearing on what it had expected to be Petitioner's "admission to this [recidivist] information filed by the State of West Virginia alleging that Mr. Ingram is a twice convicted felon." However, the parties presented an agreement that had been reached between them, specifically: Petitioner would admit to having previously been convicted of attempted third-offense shoplifting, a non-violent felony, and in return, the State would not seek a life sentence pursuant to West Virginia Code § 61-11-18(c), but rather would seek to have the minimum term of Petitioner's indeterminate sentence doubled pursuant to subsection (a) of the statute.[3] After hearing the argument of the parties, the court refused, in no uncertain terms, to accept the agreement.

---

[2] The substance of the amendment is not relevant to the issues in this case.

[3] West Virginia Code § 61-11-18(a) provided, in relevant part, that when

> it is determined . . . that such person had been before convicted in the United States of a crime punishable by confinement in a penitentiary, the court shall, if the sentence to be imposed is for a definite term of years, add five years to the time for which the person is or would be otherwise sentenced. Whenever in such case the court imposes an indeterminate sentence, the minimum term shall be twice the term of years otherwise provided for under such sentence.

> I don't see this as in the interest of public justice. Unless there's some reason, the courthouse records burned up there and nobody can find them or whatever. And I can see why the defendant would jump all over this. I was under the impression when my secretary said this was schedule[d] that he was going to enter an admission to both of those. And to enter admissions to the least offensive was, you know. Ms. Fraley has done an excellent job of selling whatever she sold to Ms. Campbell. The problem is the Court's not buying it. So the jury trial will continue. The agreement is rejected by the Court as not being in the interest of public justice.

Accordingly, the recidivist trial was rescheduled and on October 24, 2018, the jury found that Petitioner was the individual previously convicted of both non-aggravated robbery and attempted third-offense shoplifting.

On December 10, 2018, a sentencing hearing was held. Petitioner conceded that his 1997 offense, non-aggravated robbery, had involved a threat of force and was therefore a "qualifying offense" under the recidivist statute,[4] but urged the circuit court to consider the fact that the offense had occurred twenty-one years earlier, at a time when Petitioner was only eighteen years old. As for the charges of delivery of cocaine and methamphetamine (hereinafter "the triggering offenses"),[5] Petitioner argued that neither of these controlled buys had involved actual or threatened violence, and that a recidivist sentence would therefore violate the proportionality principle set forth in article III, section 5 of the West Virginia Constitution. The circuit court rejected these arguments. After hearing the argument of counsel and Petitioner's allocution, the circuit court noted Petitioner's lack of cooperation in providing information for the presentence report, his lack of remorse, and his extensive criminal history, which included twenty-six offenses

---

[4] The term "qualifying offense" does not appear in the statute, but was adopted by this Court in a long line of decisions limiting the broad language of subsection (c) to require that at least one of a defendant's prior felony offenses involved violence or the threat of violence. In the revised statute, West Virginia Code § 61-11-18 (2020), the term "qualifying offense" is now found in subsection (a) and carries a different meaning. *See* text *infra*.

[5] Again, the term "triggering offense" does not appear in the statute, but was adopted by this Court to limit the broad language of subsection (a) by requiring that the felony offense subject to an enhanced sentence must also involve violence or the threat of violence. *See* text *infra*. In subsection (a) of the revised statute, the Legislature has rendered the "triggering offense" language moot by specifically enumerating seventy-two felony offenses subject to enhancement.

3

spanning the course of twenty years.[6] The court further noted that "based on the phone records from the Southern Regional Jail . . . [t]his defendant's family did everything they could, short of killing this confidential informant, to keep her from coming to trial." Additionally, the court noted that Petitioner had been an addict for a number of years and "[d]oesn't appear to have taken any steps to get clean from drugs." Finally, the court found that the triggering offenses, delivery of cocaine and methamphetamine, "are considered violent or potentially violent by this Court." Accordingly, the court sentenced Petitioner to life with mercy on Count One of the Indictment, delivery of cocaine, and one-to-five years' imprisonment on Count Two, delivery of methamphetamine, said sentences to be served consecutively. The court also imposed a fine of $1,000.00, together with all court costs.

"'"The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syllabus point 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997).' Syllabus Point 1, *State v. Booth*, 224 W. Va. 307, 685 S.E.2d 701 (2009)." Syl. Pt. 1, *State v. Kilmer*, 240 W. Va. 185, 808 S.E.2d 867 (2017).

In analyzing Petitioner's challenge to his sentence, we begin with the text of West Virginia Code § 61-11-18(c), which provided in relevant part that "[w]hen it is determined . . . that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life." Petitioner contends that under the facts and circumstances of this case, a sentence of life imprisonment with the possibility of parole in fifteen years violates the proportionality clause of the West Virginia Constitution, article 3, section 5. In this regard, Petitioner stresses the following facts with respect to the triggering offenses: that the drug sales in question were controlled buys, set up by law enforcement authorities; that the sales were of very small quantities of drugs, and involved very small amounts of money; that the sales took place in confined spaces, a trailer and a vehicle, where there could be no unanticipated problems created by outside forces; and that there was no actual violence and no overt threat of violence in either transaction. With respect to the underlying felony, non-aggravated robbery, which Petitioner concedes involved the threat of violence, he stresses that the conviction was too remote to indicate an ongoing propensity for violence;[7] that he was only eighteen years old at the time of

---

[6] Although many of the offenses were traffic and vehicle related, in addition to the two offenses charged in the Recidivist Information, Petitioner's criminal history included six shoplifting offenses, two obstruction offenses, destruction of property, assault, and malicious wounding (reduced to a misdemeanor per plea bargain).

[7] Petitioner committed the robbery in January, 1997, more than twenty years prior to his commission of the triggering offenses in April, 2017. Under the amendments to West Virginia Code § 61-11-18 that went into effect on June 5, 2020, the passage of more than

4

commission of the offense; and that his only role in the robbery was driving the getaway car.

Until recently, this Court's proportionality jurisprudence followed a linear path forward from the seminal case of *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981), until we came to a fork in the road – and seemingly veered off in two separate directions. In *Wanstreet*, we first acknowledged that West Virginia's recidivist statute, which has been deemed to be "among the most draconian in the nation," *id*. at 536, 276 S.E.2d at 213 (citations omitted), has been upheld by this Court on numerous occasions against both state and federal constitutional challenge. *See, e.g., State v. Vance*, 164 W. Va. 216, 262 S.E.2d 423 (1980). However, after cataloguing the many cases in which we have vacated individual recidivist sentences on both substantive and procedural grounds, we affirmed our longstanding adherence to the principle that the statute should be applied "in a restrictive fashion in order to mitigate its harshness." *Wanstreet*, 166 W. Va. at 528, 276 S.E.2d at 209.

Following our decision in *Wanstreet*, this Court decided *State v. Cooper*, 172 W. Va. 266, 304 S.E.2d 851 (1983), in which we explained that "[t]here are two tests to determine whether a sentence is so disproportionate to a crime that it violates our constitution. The first is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further." *Id*. at

---

twenty years elapsing between the robbery and the triggering offenses mandates that the former may not be considered as a qualifying offense. However, as noted previously, the statutory amendment, having become effective after the petitioner's sentencing, does not apply in this case. *See, e.g.*, Syl. Pt. 13, in part, *State v. Shingleton*, 237 W. Va. 669, 790 S.E.2d 505 (2016), *superseded by statute on other grounds*, *State v. Sites*, 241 W. Va. 430, 825 S.E.2d 758 (2019):

> The statutory penalty in effect at the time of a defendant's criminal conduct shall be applied to the defendant's conviction(s). Where a statutory amendment mitigating punishment becomes effective *prior to sentencing*, West Virginia Code § 2–2–8 (2013) allows a defendant to seek application of the mitigated punishment before the trial court. (Emphasis supplied.)

272, 304 S.E.2d at 857 (citation omitted).  Thereafter, if the sentence passes the subjective test, the Court applies an objective test:

> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

*Id*. (citing Syl. Pt. 5, *Wanstreet*, 166 W. Va. at 523-24, 276 S.E.2d at 207).

Mere months after our decision in *Cooper*, we fleshed out the factors governing our consideration of the nature of the offense in syllabus point 7, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981), emphasizing that the gravamen of the analysis is violence:

> The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5, will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions.  The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute.

Thereafter, we continued to consider all proportionality challenges utilizing the framework established in *Wanstreet*, *Cooper*, and *Beck*. As directed in *Beck*, our analysis in each case focused on the violence involved in both the triggering offense and the qualifying offenses, "since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute." *Beck*, 167 W. Va. at 830, 286 S.E.2d at 236; *compare State ex rel. Appleby v. Recht*, 213 W. Va. 503, 583 S.E.2d 800 (2002) (third offense driving under the influence is a crime of violence for purposes of recidivist sentencing) *with State v. Kilmer*, 240 W. Va. 185, 808 S.E.2d 867 (2017) (driving while revoked, even though revocation was for DUI, is not a crime of violence).

In 2019, as a result of two cases decided by this Court in close temporal proximity to each other, it became apparent that the determination of what was, or wasn't, a crime of violence was an elusive one in many instances, and particularly in cases involving drug offenses, thus bringing an element of subjectivity into what had long

6

seemed a straightforward analysis.  In *State v. Lane*, 241 W. Va. 532, 826 S.E.2d 657 (2019), we reversed a recidivist sentence, concluding that the triggering offense, delivery of four oxycodone pills, did not involve any "actual or threatened violence," inasmuch as the sale had been a controlled buy which took place at the petitioner's residence.  We concluded that this result was supported by our decision in *State ex rel. Boso v. Hedrick*, 181 W. Va. 701, 708, 391 S.E.2d 614, 621 (1990) (quoting, in part, *Wanstreet*, 166 W. Va. at 534, 276 S.E.2d at 212), where we wrote that "the third felony is entitled to more scrutiny than the previous felony convictions for purposes of proportionality 'since it provides the ultimate nexus to the sentence.'" *Lane*, 241 W. Va. at 539-40, 826 S.E.2d at 664-65. Justice Armstead dissented in *Lane*, on the ground, *inter alia*, that "situations, such as the one at bar, involving use of confidential informants to conduct purchases of controlled substances are inherently dangerous and fraught with a serious risk of violence." *Id*. at 545, 826 S.E.2d at 670.

Less than two months later, in *State v. Norwood*, 242 W. Va. 149, 832 S.E.2d 75 (2019), we upheld a recidivist sentence on facts that differed from *Lane* in only one material respect: the particular drug involved in the triggering offense was heroin rather than oxycontin.  "[D]ue to the nature of heroin itself, heroin trafficking clearly warrants application of the recidivist statute.  The delivery and ultimate use of heroin carries with it an inherent risk of violence to a person.  From the moment of its clandestine creation, heroin is illegal[.]" *Id*. at 158, 832 S.E.2d at 84.  Justice Workman dissented and Justice Walker concurred and dissented; both Justices pointed out that the petitioner had "expressly waived his constitutional right to make this [proportionality] challenge," *id*. at 161, 832 S.E.2d at 87, and Justice Workman went on to argue that "[t]he majority's decision unquestionably conflicts with our existing law [in *Lane*] and undeniably treats two similarly situated individuals disparately." *Id*. at 163, 832 S.E.2d at 89.[8]

Following *Norwood*, the constitutional proportionality of a recidivist sentence in any case where the triggering offense and/or at least one prior offense were drug-related felonies appeared to hinge on whether the drug was illegal "[f]rom the moment of its clandestine creation," 242 W. Va. at 158, 832 S.E.2d at 84, or whether it was a pharmaceutical product that could, in other circumstances, be prescribed by a physician.  Accordingly, the State contends that the instant case is clearly governed by *Norwood*, arguing that since the drugs in question, cocaine and methamphetamine, have no legitimate medical use, their trafficking is a crime of violence for proportionality analysis.  Petitioner, in contrast, argues that the case is nonetheless governed by *Lane*, for two reasons.  First, since the transactions in question were so small – half a gram each of the two drugs, sold

---

[8]  The dissent also questioned whether the petitioner's prior offenses, one for distribution or possession with intent to distribute marijuana, and one for eluding the police in a vehicle, could be considered crimes of violence.  *Norwood*, 242 W. Va. at 163, 832 S.E.2d at 89.

for $50.00 and $60.00, respectively – Petitioner argues that a life sentence is grossly disproportionate to the scale of the crime. Second, Petitioner argues that a controlled buy, *i.e.*, one set up and monitored by the police, and involving a confidential informant, is far less likely to "go sideways" than a street transaction and is therefore far less prone to erupt in violence. Neither of these arguments is persuasive. The quantity of heroin in *Norwood* was totally irrelevant to the Court's analysis, and in fact, although the amount was not specifically designated in the opinion, it was necessarily small.[9] Further, implicitly rejecting the rationale set forth in *Lane*, the *Norwood* Court deemed any controlled buy involving a confidential informant to be inherently dangerous: "Had those recording devices been discovered, or the fact that the C.I. was cooperating with the Task Force been revealed, there would have been a substantial risk of violence to the C.I." 242 W. Va. at 158, 832 S.E.2d at 84.[10]

Subsequent to the parties' submission of their respective briefs in this case, this Court issued its decision in *State v. Hoyle*, 242 W. Va. 599, 836 S.E.2d 817 (2019), in which we resolved the tension between *Lane* and *Norwood* by first going back to a core principle: "the underlying purpose of the recidivist statute is 'the imposition of increased confinement for the dangerous criminal who repeatedly commits serious crimes.'" *Id.* at __, 836 S.E.2d at 832 (quoting *State v. Kilmer*, 240 W. Va. 185, 187, 808 S.E.2d 867, 869 (2017)). After recounting the facts of *Lane* and *Norwood*, which we found to be "nearly identical," we acknowledged "the need for consistency in our law" and held that,

> for purposes of a life recidivist conviction under West Virginia Code § 61-11-18(c), two of the three felony convictions considered must have involved either (1) actual violence, (2) a threat of violence, or (3) substantial impact upon the victim such that harm results. If this threshold is not met, a life recidivist conviction is an unconstitutionally disproportionate punishment under Article III, Section 5 of the West Virginia Constitution.

240 W. Va. at __, 836 S.E.2d at 833.

We conclude that Petitioner's sentence must be upheld pursuant to the test established in *Hoyle*. Petitioner concedes that his underlying felony conviction for non-

---

[9] In *Norwood*, the police gave the confidential informant $280.00 to purchase 3.5 grams of cocaine. Because the seller arrived at the designated meeting spot with no cocaine to sell, the CI purchased heroin instead. 242 W. Va. at 153, 832 S.E.2d at 79.

[10] It will also be recalled that the petitioner and/or members of his family apparently threatened the confidential informant, attempting to prevent her from testifying at trial.

aggravated robbery involved a threat of violence, and pursuant to the recidivist statute in effect at the time of Petitioner's sentencing, the circuit court had the discretion to consider this felony conviction in the proportionality analysis notwithstanding Petitioner's remoteness claim. *See* note 7 *supra*. Additionally, the circuit court specifically found that the triggering offenses, distribution of cocaine and methamphetamine, "are considered violent or potentially violent by this [c]ourt." This finding was not clearly erroneous, given the facts of this case and the apparent threats made to the confidential informant to prevent her from testifying; and further, it is wholly consistent with this Court's analysis in *Norwood* concerning controlled buys of street drugs. Finally, it is beyond dispute that both cocaine and methamphetamine, like heroin, are "a silent scourge that [have] saturated our State[,]" *Norwood*, 242 W. Va. at 158, 832 S.E.2d at 84, destroying the lives of users and their families and in many instances causing death. *See State v. Gaskins*, No. 18-0575, 2020 WL 3469894 (W. Va. June 25, 2020) (memorandum opinion) (likening cocaine to heroin, citing the "substantial impact on the victim of the crime . . . due to [the drug's] often fatal nature to its users").

In summary, in Petitioner's case, both triggering offenses as well as the prior non-aggravated robbery offense meet not just one, but two, of the factors established in *Hoyle.* Accordingly, we conclude that the sentence imposed by the circuit court was not an unconstitutionally disproportionate punishment under article III, section 5 of the West Virginia Constitution.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 19, 2020

**CONCURRED IN BY:**

Justice Margaret L. Workman
Justice Evan H. Jenkins
Justice John A. Hutchison

**CONCURRING BUT WRITING SEPARATELY:**

Chief Justice Tim Armstead

Chief Justice Armstead concurring**:**

I concur with the majority's decision insofar as it upholds the circuit court's imposition of a recidivist life sentence. Moreover, I do not disagree with the finding within the decision that, *applying the test set forth in State v. Hoyle, 242 W. Va. 599, 836 S.E.2d 817 (2019)*, the "Petitioner's sentence must be upheld." However, I write separately

because I believe that the imposition of the recidivist life sentence in this case is proper pursuant to the clear language of the recidivist statute, separate and apart from the test established in *Hoyle*. In addition, I believe that the inconsistency in applying the recidivism statute that has been lamented in recent decisions, including in *Hoyle*, is a result of the decision of the Court some decades ago to stray from simply following the statute as written.

West Virginia Code § 61-11-18 (2000) provides, in pertinent part:

> (c) When it is determined, as provided in section nineteen of this article, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life.

This statute is clear and unambiguous. It is a long-standing rule of statutory interpretation that this Court is to give plain meaning to a statute, so long as the statute is clear upon its face. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951). "Where the language of a statute is plain and unambiguous, there is no basis for application of rules of statutory construction; but courts must apply the statute according to the legislative intent plainly expressed herein" Syl. Pt. 1, *Dunlap v. State Compensation Director,* 149 W.Va. 266, 140 S.E.2d 448 (1965).

However, despite the clear language of this statute, this Court has issued a number of opinions imposing additional qualifications, none of which are included in the express language of the recidivist statute, that must be met for the imposition of recidivist sentences. As I noted in my dissent in *State v. Lane*, I believe the recidivist statute should be applied as written and that the additional requirements imposed in *Wanstreet* and its progeny, including *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981)(holding that the offenses giving rise to the recidivist life sentence should be analyzed to determine "if they involve actual or threatened violence to the person"), are beyond the scope of the statutory requirement. *See State v. Lane*, 241 W. Va. 532, 826 S.E.2d 657 (2019) (Armstead, J., dissenting).

Beginning with the decision in *Wanstreet v. Bordernkircher,* 166 W.Va. 523, 276 S.E.2d 205 (1981), this Court has attempted to reconcile its apparent concern that application of the statute as written is unconstitutional with its desire to step into the shoes of the Legislature and "fix" the statute. If the Court deemed the statute to be unconstitutional, a view with which I firmly disagree, it was within the authority of the Court in *Wanstreet* or in any of the subsequent decisions interpreting the statute, to declare it unconstitutional. In such case, it would have been within the Legislature's role, if it so

10

chose, to attempt to "fix" the statute, or revise it in such manner as to address the constitutional deficiencies. Instead, the Court essentially said "if a defendant meets these additional conditions," none of which have ever been in the statute, we will deem its application constitutional. In doing so, regardless of its altruist motives, it engaged in a textbook case of "legislating from the bench." This effort has been ongoing now for almost four decades with varying, and often inconsistent, results.[11]

The majority decision in this case concludes that Petitioner's sentence must be upheld and I agree. It has based such holding primarily on *Hoyle* and, because the majority of the court adopted the standard set forth in *Hoyle* in 2019, I believe that the facts in this case meet the *Hoyle* standard. However, deference to the clear words of the statute provide the proper support for the decision to uphold Petitioner's recidivist life sentence. Following Petitioner's convictions for delivery of cocaine and delivery of methamphetamine, the State filed a Recidivist Information and an Amended Recidivist Information alleging that Petitioner had previously been convicted of the following two felonies: non-aggravated robbery and attempt to commit third offense shoplifting. The Petitioner was found to be the same individual previously convicted of those crimes. Petitioner was convicted of three felonies and was properly sentenced pursuant to the clear language of the statute. Under the statute, these facts alone warrant imposition of the recidivist life sentence.

Accordingly, I concur in the Court's decision affirming Petitioner's sentence for the reasons stated in this separate opinion.

**DISSENTING:**

Justice Elizabeth D. Walker

WALKER, J., dissenting.

I am perplexed by how the majority can uphold a recidivist life sentence under West Virginia Code § 61-11-18(c) when Petitioner's triggering offenses of delivery of Schedule II narcotics[12] involved two small controlled buys with a street value of about $110 from an

---

[11] As the majority opinion points out, earlier this year the Legislature revised the recidivism statute in several regards. It has outlined the crimes that are to be considered qualifying offenses and more specifically defined how such offenses are to be considered when imposing a life sentence. While the current case does not fall within the scope of the recently-enacted statute, the Legislature has presumably responded to the long line of cases interpreting the prior version of the statute and exercised its legislative role to revise the statute.

[12] *See* W. Va. Code 60A-4-401.

11

acquaintance, who happened to be a confidential informant. The majority claims that the gravamen of its analysis is whether Petitioner's offenses involved violence, but the record reveals his triggering offenses involved no actual or threatened violence whatsoever.

Our Legislature created a recidivist life enhancement to punish more severely those individuals who show a propensity toward repeated criminal conduct. Under West Virginia Code § 61-11-18(c), a defendant convicted of a third felony offense shall be sentenced to life imprisonment with the possibility of parole. But the Legislature's authority to prescribe harsher punishment for habitual criminals is not without constitutional oversight. It is limited by the principle of proportionality that is embedded in the West Virginia Constitution.[13] Simply put, that concept dictates that the punishment should fit the crime.[14]

Just last year in *State v. Hoyle*,[15] this Court held that a life recidivist conviction cannot not pass constitutional muster unless two of the three felony convictions involve violence or substantial impact upon the victim:

> For purposes of a life recidivist conviction under West Virginia Code § 61-11-18(c), two of the three felony convictions considered must have involved either (1) actual violence, (2) a threat of violence, or (3) substantial impact upon the victim such that harm results. If this threshold is not met, a life recidivist conviction is an unconstitutionally disproportionate punishment under Article III, Section 5 of the West Virginia Constitution.[16]

Applying *Hoyle*'s standard to the facts of this case, we first review the circumstances surrounding Petitioner's triggering offenses—the delivery of small quantities of cocaine and methamphetamine to a confidential informant—and find they involved no actual or threatened violence, or substantial impact on the victim. There is no testimony or evidence in the record to support the majority's finding. And looking at

---

[13] *See* W. Va. Const. art. III, § 5, in part ("Penalties shall be proportioned to the character and degree of the offence.").

[14] *Weems v. United States*, 217 U.S. 349, 367 (1910) (stating generally, proportionality is a foundational "precept of justice that punishment for [a] crime should be graduated and proportioned to [the] offense.").

[15] 242 W. Va. 599, 836 S.E.2d 817 (2019).

[16] Syl. Pt. 12, *Hoyle*, 242 W. Va. 599, 836 S.E.2d 817; *see also State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981).

Petitioner's prior felony convictions, there was a single violent felony (non-aggravated robbery) and a single nonviolent felony (attempted third offense shoplifting). Because only one of Petitioner's three considered felonies met the *Hoyle* criteria, this Court should have reversed the trial court. I cannot join the majority's conclusion that the imposition of a recidivist life sentence for the three felonies for which Petitioner stands convicted withstands a proportionality challenge under our Constitution.[17]

In *State v. Lane*,[18] this Court was faced with nearly identical facts and we reached the opposite conclusion and reversed the trial court. In *Lane*, the defendant's prior felony convictions included one violent and one nonviolent offense when the triggering felony was the trafficking of four Oxycodone pills during a controlled drug buy. We reasoned that, unlike heroin,[19] Oxycodone trafficking was not a dangerous felony sufficient to trigger a recidivist life conviction. In *Lane* and in *Hoyle*, we stated the need for at least two of the three considered felonies to be violent before we could sustain a recidivist life conviction.

In a recent case decided by the Supreme Court of Louisiana, with strikingly similar facts to the one before us, the court overturned a recidivist sentence enhancement as violating the defendant's constitutional right not to be subjected to excessive punishment. In *State v. Kennon*,[20] a police informant made two small controlled buys of cocaine and methamphetamine from the defendant. The court found the 60-year habitual offender sentence unconstitutional considering the non-violent nature of the crimes.

The majority has strayed from our recently-established holding in *Hoyle* in an apparent rush to condemn drugs generally and has created a threat of violence out of whole cloth. The majority cites "the apparent threats made to the confidential informant to prevent her from testifying" but fails to mention that those alleged threats came from Petitioner's family members well after the relevant crimes were committed and not from him. The majority also concludes that this case is more similar to our prior decision in *Norwood*[21] than *Lane* because the controlled buys were of "street drugs" like heroin. But the majority misses the mark. In *Norwood*, this Court had legitimate reasons for treating heroin differently. The most common risk of death or grave bodily injury from the

---

[17] *See* W. Va. Const. art. III, § 5.

[18] 241 W. Va. 532, 826 S.E.2d 657 (2019).

[19] *See State v. Norwood*, 242 W. Va. 149, 158, 832 S.E.2d 75, 84 (2019) (upholding a recidivist life sentence when triggering offense was delivery of heroin; "[t]he delivery and ultimate use of heroin carries with it an inherent risk of violence to a person.").

[20] -- So. 3d --, 2020 WL 5405710 (La. Sept. 1, 2020).

[21] *See* note 7, infra.

distribution of heroin arises from the risk of an overdose and *every* use of heroin presents that risk.[22]  In relative terms, Petitioner's crimes pale in comparison to the lethal harm caused by those responsible for the heroin epidemic that has devastated West Virginia.

Just as my personal beliefs cannot drive my decision-making, I feel bound by the *Hoyle* test in this case for one simple reason—my respect for the rule of law.  Under *Hoyle*, a life recidivist enhancement can pass constitutional muster even when small amounts of illegal drugs are involved when two of a defendant's three felony convictions considered involved either actual or threatened violence, or substantial impact upon the victim such that harm results.[23]  But this case does not fit that mold.  I respectfully dissent.

---

[22] *Commonwealth v. Carrillo*, 131 N.E.3d 812, 820 (Mass. 2019).

[23] Syl. Pt. 12, *Hoyle*, 242 W. Va. 599, 836 S.E.2d 817.